CHARLES E. ELY, Defendant in Error, *vs.* THE KING-RICHARDSON COMPANY, Plaintiff in Error.—ROBERT E. TROSPER, Defendant in Error, *vs.* THE KING-RICHARDSON COMPANY, Plaintiff in Error.—BERT E. MANVILLE, Defendant in Error, *vs.* THE KING-RICHARDSON COMPANY, Plaintiff in Error.

*Opinion filed October 16, 1914.*

1. ACCOUNTING—*when bill for accounting will lie on contract claim.* A court of equity has jurisdiction to entertain a bill for accounting even though the complainants' claims are based upon contract and there is no trust relation between the parties, where the amount of such claims can be ascertained only by an investigation of the accounts of the defendant and the books and papers in its possession, and the accounts themselves are so complicated that it would be difficult to present them to a jury in a manner which would enable the jurors satisfactorily to determine the amount due.

2. SAME—*when the complainants are not barred by their own wrong.* Even though the conduct of agents toward their employer is inconsistent with good faith and constitutes such a breach of contract as justifies their discharge, they do not for such reason forfeit their right to compensation earned before the time of their wrongful acts, and they are entitled to maintain a bill for an accounting for the purpose of determining the amount so due them.

3. SAME—*when it is not error to require defendant to turn over notes to complainants.* In accounting it is not error to require the defendant to turn over notes in its possession to the complainants, where the defendant, though having title to the notes, is not substantially interested in them, whereas the complainants are entitled to the proceeds of the notes when collected and are therefore substantially interested in their collection.

4. COSTS—*costs of appeal should not be taxed to the appellee if modification of decree is immaterial.* If the modification of a decree by the Appellate Court is immaterial the costs of the appeal should not be taxed against the appellee.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county;· the Hon. JOHN GIBBONS, Judge, presiding.

BOYLE, MOTT & HAIGHT, for plaintiff in error.

ALDEN, LATHAM & YOUNG, for defendants in error.

Mr. JUSTICE DUNN delivered the opinion of the court:

Three separate bills in chancery were filed in the circuit court of Cook county· against the King-Richardson Company praying for an accounting and other relief. Answers were filed, the causes were referred to a master, and a hearing by the chancellor resulted in decrees granting the relief prayed for. The defendant prosecuted appeals to the Appellate Court for the First District, which modified the decrees. Upon petitions presented by the defendant, writs of *certiorari* were awarded from this court and the causes have been consolidated for hearing, the questions in all the cases being identical.

The business of the King-Richardson Company is the publication and sale of books through the agency of canvassers. It maintains an office in Chicago for the sale of its publications. The business of this office was conducted by the three complainants, who were called department managers, all the territory in which such business was carried on being divided among them and the entire expense of the maintenance of the office and the conduct of the business in Chicago being divided among them in proportion to the amount of their sales. They were employed under separate written contracts, which gave to each the control of certain territory and the exclusive right to sell the company's publications therein for the period of three years, from January 1, 1908, to December 31, 1910. Each agreed to devote his time and attention exclusively to the management and de-

velopment of the sales of the company's publications upon terms and conditions authorized by it. The duties of each were to employ suitable men as field managers and solicitors of sales; to organize and direct them; to require them to furnish adequate security to cover all money advanced and merchandise shipped to them; to conduct necessary correspondence and keep complete records of their work; to employ and manage the office force employed exclusively in his department; to supervise accounts and co-operate with the auditing department for their prompt collection; to travel in his territory when necessary for the interest of the business; to do all in his power to further the interest of the company and to follow its instructions in the conduct of his department. The company agreed to pay each of the department managers a salary of $150 a month and necessary traveling expenses when working outside the city of Chicago in connection with the business of his department, and at the end of each calendar year to allow him commissions in addition to his salary and expenses, to be determined by charging him with his salary and personal expense account and all salaries, commissions, due bills and allowances to all employees in his department, together with thirty-nine per cent of the retail price of all books sold by his department and the actual cost of prospectuses and outfit supplies used therein, and crediting him with all cash receipts from business transacted by his department, plus the credit balance, or less the debit balance, arising from the settlement of the office expense account. In settling this latter account the manager was to be charged with all salaries of stenographers and other office assistants engaged exclusively in the conduct of the business of his department, all stationery, printed matter, office supplies, postage, telegrams, telephone tolls and express used in his department, and that proportion of the total expense of the maintenance of the Chicago office which the net sales of his department

bore to the total net sales of the office, and he was to be credited with nine per cent of the retail price of the total net sales of his department, except for 1908, when he was to be credited with ten per cent.   The manager was entitled to any excess of receipts above the total charges against him, and was to be furnished commission statements not later than October 25 of each year, including accounts to October 1, and thereafter not later than the twenty-fifth day of each month, showing accounts up to the first day of the same month, until all business of the fiscal year should be closed.   Remittances for sales were made directly to the company and were applied first to the payment of the charges mentioned in the contracts of employment of the department managers.   Subsequent collections, as received, were credited to the department managers, and it was the practice of the auditor to give to each of the department managers at the end of each month a check for all money collected from the business in his territory.   Some of the accounts prior to July 16, 1910, had been settled by the giving of notes, and these notes had been indorsed by the company's auditor and delivered to the complainants, respectively, and charged to them as if they had received so much money.   On July 16, 1910, the complainants were discharged by the company without notice and excluded from its office.   The company took possession of the notes mentioned, which were in the desks of the complainants in the company's office.   Soon after, the complainants filed these bills for an accounting of the business done prior to 1910, that year not being included because the contracts provided for the accounting in October of each year.   Besides the money collected and standing to their credit the complainants demanded that the notes should be delivered to them as well as the uncollected accounts, and all contracts, surety agreements and correspondence relating thereto. The decree required the payment by the company, in each

case, of the amount of money received by the company and due to the complainant, and also the delivery of the notes and accounts and the contracts and correspondence concerning them. The modification made by the Appellate Court consisted only in the addition to that part of the decree which required the delivery of the notes to the complainants, of the words, "which notes shall be indorsed 'without recourse,' by the defendants."

Although the complainants' claims were based upon contracts and there was no trust relation between the parties, it is manifest that the amount of those claims, respectively, could be ascertained only by an investigation of the accounts of the plaintiff in error and the books and papers in its possession, and that the accounts themselves were so complicated that it would be difficult to present the various items to a jury in such a manner as to enable the jurors satisfactorily to determine the amount due. In such case it is well settled in this State that a court of equity has jurisdiction to entertain a bill for an accounting. *Miller* v. *Russell,* 224 Ill. 68; *Townsend* v. *Equitable Life Assurance Society,* 263 id. 432.

It is argued on behalf of the plaintiff in error that the complainants are not entitled to any relief in equity because they do not come into court with clean hands. This contention is based upon the fact that the complainants during the year 1910, while they were in the employ of the plaintiff in error, began the organization of a rival corporation in the same business, under the name "The W. E. Richardson Company," for the purpose of carrying on business in competition with the plaintiff in error. It is claimed that the complainants attempted to induce a number of the employees of the plaintiff in error to enter the employment of the new corporation, and in several cases did induce employees of the plaintiff in error to enter into contracts with the W. E. Richardson Company which were to take effect

before their contracts with the King-Richardson Company expired. It was because of this conduct that the plaintiff in error discharged the complainants in July, 1910. Even if the conduct of the complainants was inconsistent with good faith to their employer and constituted a breach of their contract, they did not thereby forfeit the compensation which they had before earned. They might be liable for damages for the breaches of their contracts,—perhaps they might be enjoined from pursuing a course of conduct inconsistent with their contract obligations,—but they could not be deprived of their compensation already earned. The accounting sought was only in reference to the business of preceding years which was completed. The rights of the respective parties as to this business were settled, while no accounting of the business of 1910 was due for several months after the bills were filed. There was nothing unlawful or contrary to good morals or public policy in the original contracts of employment, and there is no reason why the complainants should not have an accounting as to their compensation under them. The maxim that he who comes into equity must do equity cannot deprive the complainants of their right to an accounting which is not founded in any way upon their wrongful conduct.

The notes and accounts arising out of the business for the years prior to 1910 were the property of the plaintiff in error. Their amount, when collected, would be immediately due and payable to the complainants according to the express terms of the contracts, the plaintiff in error having already received all that it was entitled to under the contracts. The contracts contained no express requirement upon the plaintiff in error to collect these notes and accounts. Their only provision in this regard was that the complainants should supervise accounts and co-operate with the auditing department for their prompt collection. Whether the discharge of the complainants was justified or not, whether

the severance of the relations between the parties was the result of a wrong on the one side or the other, the carrying out of the terms of the contract in regard to the collection of these debts would be attended with difficulty, and unsatisfactory. The plaintiff in error having no interest in the collection of the debts had no incentive to diligence, and the complainants having no control of the evidence of indebtedness would be subject to inconvenience in making collections. The complainants were the only persons interested in the collection of the debts, and the plaintiff in error was in reality only an intermediary or conduit through which the money must pass. A court of equity having jurisdiction of the subject matter of the accounting between the parties under these contracts, might have appointed a receiver for the collection of these claims. Since the plaintiff in error, though having the title, was without any substantial interest, it was not inequitable for the court, instead of appointing a receiver, to require the delivery of the property itself to the complainants, who alone were beneficially interested in the proceeds. The notes had already been delivered to them and the auditor of the plaintiff in error had attempted to indorse them, though his authority to make such indorsement is denied by the plaintiff in error. The decree required the delivery of the notes to the complainants but did not require any further indorsement of them by the plaintiff in error. The modification of the decree by the Appellate Court was therefore immaterial. To make the decree effective it was necessary that the complainants should have access to the itemized statements showing payments on account and correspondence referring to the payment and collection of the accounts, and the court properly required that such statements or correspondence, or copies thereof, should be delivered to the complainants.

Before the filing of the answer the complainants made a motion for an order directing the plaintiff in error to

deliver to the complainants the notes and accounts in controversy, or give security for their collection and the payment of the amount collected to the complainants at the termination of the cause. This motion was referred to the master and a large amount of evidence was taken upon this reference. The motion was never brought to a hearing, and it is insisted that the costs of taking this evidence should not have been taxed against the plaintiff in error, as it was by the decree. There was later a general reference of the cause to the same master, and it was stipulated that the evidence taken on the reference of the motion should stand as evidence under the general reference, and such evidence was considered on the final hearing. It is insisted that the court had no jurisdiction to grant the motion, and that therefore the costs made on the reference of the motion should not be taxed to the plaintiff in error. Whether the court could grant the motion or not, the evidence taken was pertinent to the issues in the cause and was properly taken and considered in the cause. The taking of it added nothing to the costs in the cause, and the court did not abuse its discretion in taxing all the costs against the plaintiff in error.

The complainants have assigned cross-errors on the judgment of the Appellate Court taxing the costs of the appeal against them. We have held that the modification of the decree by the Appellate Court was immaterial. The costs should not, therefore, have been adjudged against the appellees there, and their assignment of cross-errors will be sustained.

The judgments of the Appellate Court are reversed and the decrees of the circuit court affirmed, the costs of all courts to be paid by the plaintiff in error.

*Judgments reversed.*