341 F.2d 34
 Edwin G. RICHER, a/k/a E. G. Richer & Company, Plaintiff-Appellee,
v.
KHOURY BROS., INC., and Henderson Quality Shops, Inc., Defendants-Appellants.
Edwin G. RICHER, a/k/a E. G. Richer & Company, Plaintiff-Appellant,
v.
KHOURY BROS., INC., and Henderson Quality Shops, Inc., Defendants-Appellees.
 Nos. 14531-14532.
 United States Court of Appeals Seventh Circuit.
 February 1, 1965.
 
 Robert S. Solomon, Ira Bell, Chicago, Ill., Perlman, Rubin & Schulman, Chicago, Ill., of counsel, for Edwin G. Richer.
 Howard Goldman, Robert Nystrom, Chicago, Ill., for Khoury Bros., Inc.
 Before CASTLE, Acting Chief Judge, and DUFFY, SCHNACKENBERG, KNOCH, KILEY and SWYGERT, Circuit Judges.
 
 
 1
 CASTLE, Acting Chief Judge.
 
 
 2
 Edwin G. Richer, the plaintiff, instituted this diversity action in the District Court for a declaratory judgment that the defendants, Khoury Bros., Inc., and Henderson Quality Shops, Inc.,[1] are obligated to him for commissions on merchandise sold by the defendants to certain mail order companies. The cause was tried to the court which, after making and entering findings of fact and conclusions of law, entered judgment that the defendants account to the plaintiff for commissions on such sales as resulted from the listing and depiction of defendants' merchandise in certain of the mail order companies' catalogues and retail basic lists published for periods in 1962 and 1963; and that the plaintiff account to defendants for the time he devoted to his own or any other business during the period between November 1, 1961 and August 10, 1962, and for any ultimate profit he made from his business or employment, other than his employment by defendants, during that period. The judgment order designates a special master to take evidence concerning such accountings, to report findings and conclusions thereon, and to make a recommendation for a decree of accounting. It orders the costs of the accountings be apportioned equally between the parties and that each make an initial deposit of $500.00 as security for such costs.
 
 
 3
 The defendants appealed (No. 14531). The plaintiff prosecutes an appeal (No. 14532) from that part of the judgment order or decree which declares the defendants are entitled to an accounting from the plaintiff; directs such accountings before the special master; and orders an apportionment of accounting costs to, and a security deposit by, the plaintiff.
 
 
 4
 The substance of the District Court's factual findings which are pertinent to a resolution of the issues presented by the contentions advanced on these appeals may be summarized as follows.
 
 
 5
 The plaintiff, until August 10, 1962, was a manufacturer's representative for the defendants, manufacturers of unpainted furniture who sold primarily to large mail order companies. The relationship began in 1953 under an oral agreement which provided, in part, that plaintiff would attempt to induce mail order companies to insert descriptions and photographs of defendants' merchandise in the companies' catalogues and retail basic lists. For his services plaintiff was to receive a commission[2] computed on the basis of a percentage of the sales made by defendants to the mail order companies as a result of such listings. In October of 1961 it was agreed that as of November 1, 1961, the plaintiff would personally devote all of his time to performing services for the defendants and that he would not perform services for any other manufacturer after that date. This agreement, which was reduced to writing in the form of a "notice" defendants mailed to the plaintiff, provided that the plaintiff would "work for Khoury Bros., solely" and also reduced the percentage which plaintiff thereafter was to receive as his commission on sales to the mail order accounts serviced by him. On August 10, 1962, defendants terminated their business relationship with the plaintiff and after that date he performed no services for the defendants. The plaintiff had performed services in procuring the insertion of defendants' merchandise in 1962, 1962-1963, and 1963 catalogues and retail lists issued by the mail order companies. He had not been paid a commission on sales made by the defendants to the mail order companies after August 1, 1962. The plaintiff did not devote all of his time to the business of the defendants as contemplated under the October 1961 agreement but carried on a substantial business of his own during the whole of the period that followed.
 
 
 6
 The District Court concluded that during the life of the respective catalogue or retail basic list plaintiff is entitled to a commission on sales made by the defendants to the mail order companies of items of defendants' merchandise listed and depicted in 1962, 1962-1963, and 1963 catalogues and lists.[3] The court concluded plaintiff had breached his October 1961 agreement to work solely for the defendants and defendants are entitled to an accounting from the plaintiff for "the value of the time spent by him in business other than that of the defendants" and for "the profit plaintiff ultimately received on account of carrying on said other business" for the purposes of arriving at an amount to be set-off against the commissions found to be due him.
 
 
 7
 The defendants do not assail the factual findings of the District Court as lacking such substantial evidentiary support as to be clearly erroneous but contend the court erred in concluding plaintiff is entitled to a commission on sales consummated after defendants terminated the contract with plaintiff on August 10, 1962. The defendants additionally contend that plaintiff's continued operation of his own business after his October 1961 agreement to work solely for the defendants not only constituted a material breach of an express provision of the contract, which precludes plaintiff from enforcing the contract, but also was a breach of the fidelity plaintiff owed defendants as their representative which operated to effect a forfeiture of plaintiff's right to compensation from the defendants.
 
 
 8
 The plaintiff concedes the contract was for no definite period and was terminable at the will of either party but contends that in the absence of a provision cutting off commissions on sales from listings already obtained before the contract's termination he is entitled to commissions on sales which resulted from those listings and which were made during the life of the catalogue although after the termination of the contract. Plaintiff further contends the trial court's finding that plaintiff breached his agreement to work solely for defendants by operating a substantial business of his own lacks requisite subsidiary findings and is not supported by substantial evidence and, in any event, if the finding is proper it affords no basis on the facts and circumstances disclosed by the record for either denying plaintiff compensation under the contract's provisions or for a set-off on the basis of time spent or profits earned by him in such other business activities.
 
 
 9
 The defendants admit that the volume of items ordered from them was dependent in turn on the orders received by the mail order companies from their catalogue customers; that since these ultimate customers ordered from catalogues it was imperative that the defendants' furniture be continued to be listed and depicted in the catalogues; and that it was the express function of the plaintiff to service the mail order companies, to do everything required or helpful to induce them to continue to list and depict the defendants' merchandise in their catalogues as they were issued.
 
 
 10
 The record discloses that since the mail order company catalogues were planned six to twelve months in advance of their publication, there was always a six to twelve months lag between the services plaintiff rendered in connection with procuring the insertion or retention of listings of items of defendants' merchandise therein and the time when he would first start to receive commissions on sales resulting therefrom. All commissions[4] were paid to the plaintiff monthly on the basis of defendants' sales in the prior month. Such monthly payments included the commissions computed on the basis of sales of such listed items made by the defendants to the mail order companies in the prior month.
 
 
 11
 The record further discloses that prior to the time plaintiff agreed to work solely for defendants, he handled accounts for other manufacturers and the defendants knew this. When the October 1961 agreement was made plaintiff hired an employee, Robert Hoag, to handle these other accounts. The only evidence of any services thereafter performed by plaintiff personally on or for these other accounts is that he answered an occasional telephone call concerning such business and would have Mr. Hoag call the person back, or would answer the inquiry if he could. He occasionally answered correspondence. In one instance he distributed the sales aids of another manufacturer to defendants' salesmen. This was in connection with a display of an upholstered furniture manufacturer's product in the defendants' show room at a June, 1962 furniture show. Defendants were at the time considering buying the upholstered furniture company and the display and distribution was arranged with the consent of the defendants for the purpose of ascertaining the public's reaction to the manufacturer's chairs pending defendants' decision on purchasing the factory.
 
 
 12
 There is no evidence in the record, and no suggestion in the District Court's findings, that any of the other accounts handled by the plaintiff were competitive with defendants' product — unpainted furniture. The record is devoid of evidence of secret profits or expropriated or diverted sales.
 
 
 13
 In support of their contention that the court erred in holding plaintiff is entitled to commissions on sales to mail order companies of items listed in the 1962, 1962-1963, and 1963 catalogues during the period of the life of such catalogues the defendants point with emphasis to an allegation of Count I of plaintiff's complaint that defendants had agreed to pay plaintiff a commission of "3% of the sale price of all other merchandise sold during plaintiff's term of employment". Defendants argue that by this allegation plaintiff demonstrates it was the intent of the parties that all commission payments cease upon a termination of the contract. But there are a number of reasons why this argument is unpersuasive. Defendants denied this allegation; plaintiff offered no proof to establish a definite term of employment and it is conceded by both the defendants and the plaintiff that the contractual relationship between them was terminable at the will of either party. Moreover, the allegation follows those relating to the contractual arrangements governing the commissions on the sales of defendants' merchandise resulting from its listing in the catalogues of mail order companies, and it is expressly limited to a commission to be paid on sales of "other" merchandise. No claim for such commission is made in the complaint or is it here involved, and the District Court's findings on the basis of the evidence adduced implicitly and correctly negate the assignment of any probative value to this bare allegation. And the fact that payment of commissions accruing on sales of the previous month was made to plaintiff each month does not, as defendants urge, establish any barrier precluding plaintiff's recovery of the commissions contingently earned through his services in connection with the catalogue listings by the mail order companies but not realizable or accruing until sales subsequent to the termination of the contract.
 
 
 14
 We agree with the plaintiff that the rationale of Heuvelman v. Triplett Electrical Instrument Co., 23 Ill.App.2d 231, 237-238, 161 N.E.2d 875, 878; Atkinson v. New Britain Machine Co., 7 Cir., 154 F.2d 895, and Groome v. Freyn Engineering Co., 374 Ill. 113, 28 N.E. 2d 274, is equally applicable to the facts and circumstances of the instant case. Plaintiff as the procuring cause of the sales, under the agreement of the parties as found by the District Court on the basis of substantial evidentiary support, is entitled to commissions notwithstanding the fact that the sales were made or consummated subsequent to the termination of the plaintiff's services. And, in view of the nature of the subject matter here involved — the procuring or continuation of catalogue listings to produce future sales during the period the catalogue is to serve and be current — makes it entirely reasonable that in the absence of an express cut-off limitation compensation on a commission basis dependent on such future sales include commissions on such sales occurring subsequent to termination of the salesman's or representative's contract.
 
 
 15
 We turn to consideration of the contentions of the respective parties concerning the court's findings and conclusions with respect to plaintiff's operation of his own business subsequent to the October 1961 agreement and the effect of this conduct on his right to the commissions he claims or as establishing a right in the defendants to the accounting ordered of the plaintiff.
 
 
 16
 We are inclined to agree with the plaintiff that the court's finding that plaintiff breached his agreement to work solely for the defendants is not supported by substantial evidence. Plaintiff hired an employee to service the other accounts he had been personally handling. There is undisputed testimony that this employee was able to devote about 25% of his time to assisting plaintiff with the defendants' account and business. This would hardly indicate that there was any need or occasion for the plaintiff to devote time to the other accounts. The mere fact that he answered an occasional telephone call or letter concerning these other accounts does not in our opinion serve to establish a material breach of the agreement that he work "solely" for the defendants. But even if it be conceded that the court's ultimate finding of a breach by the plaintiff of this part of the agreement is not clearly erroneous such finding does not, as defendants urge, require a conclusion that the breach effected a forfeiture of plaintiff's right to the commissions here involved. Where an agent or representative is guilty of a mere contractual breach even though it is inconsistent with good faith to the employer it does not forfeit the agent's right to compensation already earned and he may maintain an action for an accounting for the purpose of determination of the amount due. Ely v. King-Richardson Co., 265 Ill. 148, 106 N.E. 619, L.R.A. 1915B, 1052. The cases relied upon by defendants as requiring a complete forfeiture of any right of the plaintiff to commissions (Raymond v. Davies, 293 Mass. 117, 199 N.E. 321, 102 A.L.R. 1112 and Little v. Phipps, 208 Mass. 331, 94 N.E. 260, 34 L.R.A.,N.S., 1046) involved gross disloyalty by agents who made secret profits at the expense of their principals. Such cases are not apposite. Plaintiff's conduct in operating a business not shown to have been competitive with that of the defendants affords no basis for a conclusion that he breached any fiduciary duty owed the defendants or made secret profits at their expense. At the most, plaintiff would be liable to the defendants only for any damage or loss they sustained because of the breach. Ely v. King-Richardson Co., 265 Ill. 148, 153, 106 N.E. 619. The defendants asserted no claim that plaintiff's operation of his business resulted in any damage or loss to them. Nor does the record establish that the plaintiff's conduct in this connection adversely affected the defendants' business or caused any damage or loss to the defendants. We conclude that in the absence of some affirmative showing of actual damage or loss occasioned by the plaintiff's continued operation of his own business there is no basis for any order that plaintiff account to the defendants for the value of time spent in pursuit of his own business. An accounting should not be awarded on mere speculation that a breach of a contractual obligation of a non-fiduciary nature may have caused some damage where no such claim is asserted or evidence tending to establish damage adduced. The District Court's conclusion that plaintiff's operation of his business was "to the damage of the business of the defendants" is without foundation in the record.
 
 
 17
 And, the plaintiff is not, on the facts and circumstances presented by the record before us, obligated to account for the profits he may have realized from the operation of his own business. Restatement of the Law, Second, Agency §§ 400 and 404. No breach of fiduciary duty, conflict of interest, self-dealing, secret profits through the expropriation or diversion of business from defendants, or like conduct is here involved.
 
 
 18
 The judgment order of the District Court is affirmed except in so far as it orders and directs an accounting by the plaintiff to the defendants, orders an apportionment of costs of accounting to the plaintiff, and directs that plaintiff deposit security for such costs. As to these excepted matters the judgment order is reversed. The cause is remanded to the District Court with directions to enter a judgment order in conformity with the above.
 
 
 19
 Costs on these appeals are awarded to the plaintiff and against the defendants.
 
 
 20
 Affirmed in part, reversed in part, and remanded with directions.
 
 
 21
 HASTINGS, Chief Judge, did not participate in the consideration and disposition of this appeal.
 
 
 
 Notes:
 
 
 [1]
 Khoury Bros., Inc., succeeded to Khoury Bros. Mill Works, Inc., July 1, 1960. Henderson Quality Shops, Inc., is a wholly owned subsidiary of Khoury Bros., Inc. For convenience, "defendants" as used herein will refer to the latter two corporations, and to Khoury Bros. Mill Works, Inc., as to events prior to July 1960
 
 
 [2]
 From the record it appears that the arrangement for compensation on a commission basis commenced in 1955
 
 
 [3]
 References hereinafter made to "catalogues" are to be taken as including "retail basic lists"
 
 
 [4]
 The record discloses that plaintiff was paid, and his agreement with the defendants covered, commissions on certain sales other than those to the mail order companies as the result of catalogue listings. This suit, however, does not involve a claim for such commissions