David **CHANDLER**, Appellant,

v.

**ROSEWIN COATS, INC.,** Respondent.

No. KCD 26439.

Missouri Court of Appeals,
Kansas City District.

Oct. 7, 1974.

Rehearing Denied Nov. 4, 1974.

Herbert M. Rope, Kansas City, for appellant; Rope, Shanberg & Rope, Kansas City, of counsel.

Leonard Rose, Kansas City, for respondent; Sheffrey, Ryder, Skeer, Krigel & Rose, Kansas City, of counsel.

Before PRITCHARD, P. J., and SWOFFORD and SOMERVILLE, JJ.

PRITCHARD, Presiding Judge.

Appellant, a salesman of ladies' apparel, sought to recover additional commissions of $21,533.06 to those paid him by respondent manufacturer in the amount of $7,906.10, as stipulated. The court allowed appellant $7,608.00, plus interest for a total of $8,910.87.

Mention should be made of the appellant's points and authorities which do not at all comply with the plain provisions of Rule 84.04(d), V.A.M.R. that "The points relied on shall state briefly and concisely what actions or rulings of the court are sought to be reviewed and wherein and why they are claimed to be erroneous, with citations of authorities thereunder. * * * Setting out only abstract statements of law without showing how they are related to any action or ruling of the court is not a compliance with this rule." Appellant's points are abstract, but the noncompliance with Rule 84.04(d) may have been occasioned by his misconception of the scope of appellate review in this court-tried case. The review is not strictly de novo. It is governed by Rule 73.01(d): " * * * The appellate court shall review the case upon both the law and the evidence as in suits of an equitable nature. The judgment shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses. * * *." Curiously, while quoting this portion of

Rule 73.01(d), respondent, although not required to file a brief, does so but also makes mostly abstract points, and does not set forth why the trial court did not err in rulings, findings and judgment.

The "Standard Contract" of the parties is recorded on a printed form of the "National Association of Women's and Children's Apparel Salesmen, Inc." It is dated April 16, 1968, and by paragraph 2(a) provides: "The Company agrees to pay the Salesman as compensation for his services a commission of seven per cent (7%) on the net * * * amount of sales made, shipped and/or distributed into Salesman's territory, consisting of the following states, in which Salesman shall have exclusive territorial rights: Missouri, Iowa, Nebraska, Illinois, Kansas, except for Lyttons of Chicago, Illinois." Paragraph 2(f) provides: The Company shall have the option of accepting or rejecting any order taken by the Salesman, and no commissions shall be payable hereunder except on goods actually shipped by the Company and received and accepted by the purchaser, provided, however, that the Company guarantees to pay the Salesman commissions on a minimum of eighty-five per cent (85%) of accepted orders, whether shipped or not." Paragraph 4(a) provides: "The Salesman agrees to diligently and faithfully work the territory assigned to him in an endeavor to secure business for the Company." Paragraph 9 provides that the "agreement and writing constitutes and expresses the whole agreement" and that no alterations or variations should be valid unless in writing and signed by the parties.

Appellant's Point I(A) relates to his claimed de novo review in this court, which is answered above. Point I(B) is that "The entire course of conduct of the defendant from the inception of the relationship renders its testimony and evidence unreliable; it should accordingly be rejected." This unspecific point can only relate to the credibility of the testimony, which is solely for the trial court to adjudge under the sharply conflicting testimony on the

basic issues in this case. Farmers Mutual Fire & Lightning Ass'n v. La Vallee, 501 S.W.2d 69, 74 [3–5] (Mo.App.1973). Point I(C) is "Notwithstanding plaintiff had the burden of proof, it is ameliorated by the fiduciary relationship of the parties and defendant's breach thereof." It may be that where, as here, a salesman's commissions are determined upon a percentage or net profits, and the books and records concerning the same are kept by the employer that a trust relationship is raised to disclose the relevant information. Zickel v. Knell, 357 Mo. 678, 210 S.W.2d 59, 62[5–7] (1948). However, it is not suggested by appellant that any record information was withheld from him. He, of course, had the benefit of all the methods of discovery (which were extensively accomplished) under Rule 56 et seq., and under this posture appellant may not claim (and does not show) that respondent breached any duty properly to disclose information as to the total of net sales upon which commissions were claimed.

■ There was evidence as to the custom and practice of respondent's customers to deduct 8% of their billings regardless of when paid. The court determined that 8% for cash should be deducted to arrive at net sales upon which appellant's 7% commissions were to be based, as the term "net sales" is set forth in the agreement. Respondent's witnesses testified that the 8% deduction was always taken by customers. Such accounts from respondent and received by appellant as were in evidence here shows that the 8% trade discount was always deducted. Appellant conceded that if the customer did not meet the discount date [8% 10 days E.O.M. (end of month) as billed] and had to pay the full amount, then his commission rate would apply to that amount, and that the net amount of sales was the amount paid to respondent— "the calculation of commission is what the company receives." There was no evidence to the contrary that it was not the custom and practice to deduct the trade discount, nor that it was not always al-

lowed to respondent's customers. Thus, the trial court did not err in computing the amount of commissions due appellant by deducting the 8% trade discount.

■ It was stipulated that the sales to Brandeis, Omaha, Nebraska, upon which appellant was claiming full 7% commissions, were $65,000.00, rather than $80,000.-00, which he originally claimed. The court deducted 8% trade discount from the total amount of sales if found to have been made. Obviously, if appellant's full commission was applicable to the stipulated amount, the deduction was in error. Appellant is entitled to 7% of the $5,200.00 difference, or $364.00 more commission than his judgment provides.

■ Respondent claimed that it was entitled to deduct from total sales made for commission computations, an allowance for "off-price" sales, and for merchandise returned to it by its customers. The "Standard Contract" makes no specific reference to either of those aggregate items. Respondent's witness, Merrill Rose, testified as to "off-price" sales that he had a conversation with appellant after the signing of the contract: "I told him, as well as any other salesman with whom we have had dealings, that the payment of commissions on off-price merchandise was more or less left to my discretion. If we took a serious loss on a sale we paid nothing. If it was a loss which—a price which was fairly close to the proper selling price, then in that instance we gave half commission. * * * Q Well, let me put it this way: Were off-price goods sold to customers of Rosewin from time to time in Chandler's overall territory? A Yes. Q Who were the biggest customers of off-price goods in that area? A During the period it was Macy's here in Kansas City and Brandeis in Omaha. Q Are those two accounts two of the bigger accounts that Rosewin has? A Yes. * * * Off price remains the same as on sales because we shipped it all, and it was thirty thousand two seventy-five. We received returns of nine thou-

sand one seventy-nine, and there was an eight per cent discount deducted." Appellant misconceives the parol evidence rule in this: Oral evidence of agreements made *prior to or contemporaneous* with a written contract is not admissible to vary its terms. Oral evidence of agreements which modify a written contract and which are made *subsequent* to its execution are admissible. George F. Robertson Plastering Co. v. Magidson, 271 S.W.2d 538, 541[2–4] (Mo. 1954), and cases and authority cited. Thus, the parol evidence rule was no bar to the receipt of the respondent's oral evidence. Appellant, however, presents also the point that the parol evidence which modified the written agreement was within the bar of the statute of frauds, § 432.010, RSMo 1969, V.A.M.S. The original contract here was not required to be in writing because by its terms appellant agreed to act as salesman for respondent for "a period of one (1) year from the date hereof, and this agreement shall be automatically renewed from year to year and with the same terms and provisions, unless this agreement shall be terminated sooner in the manner hereinafter provided." By paragraph 5.(a) of the Standard Contract it was provided that either party should have the right to terminate it prior to the expiration of the term, on written notice given to the other party at least 60 days before the commencement of the next selling season. Selling seasons were specified to commence for Spring, October 1st, and for Fall, April 1st. Thus, there was a possibility that performance could be had in less than one year. See Kansas City Stock Yards Co. v. A. Reich & Sons, 250 S.W.2d 692, 699 (Mo.1952), quoting 37 C.J.S. Frauds, Statute of § 55, p. 562. See also 2 Corbin on Contracts, § 449, p. 560, and pocket part. The cases in this state which rule that a written contract may not be modified by parol, such as Zink v. Pittsburg & Midway Coal Mining Co., 374 S.W.2d 158, 163 (Mo.App.1964); and Fisher v. Miceli, 291 S.W.2d 845 (Mo. 1956), refer to contracts *required* to be in

writing under the statute. "The fact that the earlier contract was in writing does not cause a later contract to be within the statute of frauds; * * *." 2 Corbin on Contracts, § 301, p. 89; and see Pinson v. Odom, 250 S.W.2d 609, 611 (Tex.Civ.App. 1952), "The written contract declared on in this case is not such contract as is required to be in writing under the statute of frauds. Therefore, the parties could, by subsequent agreement, modify and change its terms. (Citing cases.)" The court did not err in considering the parol evidence tending to show a modification of the original contract as to exclusion from commissions the "off price" sales made by respondent, and the weight, value and credibility of that testimony was for the trial court.

■ With respect to its construction of paragraph 2(f), the trial court was correct in holding that the proviso that respondent guaranteed to pay appellant on a minimum of 85% of accepted orders, whether shipped or not, meant merely that he was entitled to commissions on unshipped orders only if respondent's acceptances of orders in the aggregate were less than 85%. The evidence showed that more than 85% of accepted orders were shipped.

The trial court found that appellant was not entitled to commissions upon orders accepted by respondent which came from Famous-Barr in St. Louis, in total amount of $19,230.00. There was conflicting testimony as to whether appellant had ever called upon Famous-Barr. The court found from the evidence that appellant "did not diligently and faithfully 'work' these customers (Leighters, from which no net sales were included in the computation, and Famous-Barr) or call upon them." Paragraph 4(a) of the Standard Contract provides that appellant shall diligently and faithfully work the territory assigned to him in an endeavor to secure business for respondent. The court further found that there was insufficient evidence to counteract appellant's testimony that he made contacts with other customers.

The general rule is stated in 3 C.J.S. Agency § 335, p. 145: "An agent is not entitled to compensation for his services from his principal where he has willfully disregarded, in a material respect, an obligation which the law devolves upon him by reason of his agency, or has violated his duties to his principal. In other words, an agent cannot recover compensation for his services unless he has faithfully discharged his duties toward his principal. In the application of this rule the injury to the principal is immaterial, since the action of the agent affects the contract of agency from considerations of public policy rather than of injury to the principal. In such case the agent may not even be entitled to recover the reasonable value of his services." See also Restatement of the Law of Agency, 2d, § 399, Comment (g), and § 456; 3 Am.Jur.2d Agency, § 249, p. 616; and compare also Clarkson v. Standard Brass Mfg. Co., 237 Mo.App. 1018, 170 S.W.2d 407, 415[13] (1943), "Plaintiff could have no right to compensation without the rendition of service. * * * Plaintiff's obligations to defendant to use his best efforts to retain business were not fulfilled, as evidenced by his own testimony. * * * A demand of something for nothing is reduced to dross in the flame of conscience and equity closes the door in its face." Here, the provision that appellant diligently and faithfully work his territory is for the benefit of respondent, and it is obvious that if appellant had called upon no customers whatsoever, he would not have performed his part of the contract and would have been entitled to no compensation. The failure to call upon Famous-Barr, as found by the court, had merely the effect of apportioning appellant's compensation to other services rendered. Richer v. Khoury Bros., Inc., 341 F.2d 34 (C.A. 7th 1965), cited by appellant is distinguishable because in that case there was an immaterial breach of agent's duties, not affecting *earned* commissions. Here there is no performance by appellant in calling upon Famous-Barr which affects his right to commissions originating from that customer. The trial court was not clearly erroneous in ruling this claim in favor of respondent.

The matter of credit for "returns" upon total sales made stands upon a different basis than the deduction for "off price" sales. The Standard Contract provides that "no commissions shall be payable hereunder except on goods actually shipped by the company and received and *accepted* by the purchaser, * * *." If goods were returned by a customer obviously they would not have been accepted and therefore appellant is entitled to no commission on sales made where the goods were returned, here in total amount of $9,179.00 as found by the trial court.

The judgment for plaintiff in the amount of $8,910.87 is affirmed, but the same is modified to include the $364.00 due by reason of the erroneous deduction of the trade discount on Brandeis sales, and the case is remanded with directions to enter a new judgment including the $364.00 additional amount and interest thereon from October 14, 1969.

All concur.