**HAROLD WRIGHT COMPANY, INCORPORATED, Plaintiff–Appellant,**

v.

**E.I. DU PONT DE NEMOURS & COMPANY, INCORPORATED, Defendant–Appellee.**

No. 94–1782.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 24, 1995.

Decided Feb. 28, 1995.

Rehearing and Suggestion for Rehearing En Banc Denied March 30, 1995.

Edward Kaplan (argued), Edward Kaplan & Associates, Chicago, IL, for plaintiff-appellant.

Philip A. Whistler, Curtis W. McCauley (argued), Ice, Miller, Donadio & Ryan, Indianapolis, IN, for defendant-appellee.

Before POSNER, Chief Judge, and CUMMINGS and ROVNER, Circuit Judges.

POSNER, Chief Judge.

This is a baffling little contract case. The Harold Wright Company had since 1984 been an independent manufacturer's representative for Du Pont in several midwestern states. Its responsibility was to promote the purchase of Du Pont's fishing products at both the wholesale and retail levels, as by representing Du Pont at trade shows and making calls on retail sellers of fishing equipment. Wright was not in the chain of distribution; it neither bought fishing products

from Du Pont nor resold them. But in consideration for its services in the promotion of those products, Wright's contract with Du Pont entitled it to a commission (a specified percentage of the invoice price) "on those orders we [Du Pont] accept and ship." The contract was terminable by either party on thirty days' notice.

The largest customer for Du Pont's fishing products in Wright's territory was Kmart. The marketing program that Wright helped Du Pont develop for Kmart was oriented toward orders for the following calendar year. Thus, by October 1, 1991, Wright had completed its work on the Kmart marketing program for 1992 but no orders resulting from the program were placed by Kmart with Du Pont until 1992. Du Pont terminated Wright as of the last day of 1991 and refused to pay Wright commissions on any fishing products shipped to Kmart or any other customer in Wright's territory thereafter. In this diversity breach of contract suit governed by Indiana law, Wright seeks commissions on all shipments of fishing products by Du Pont in Wright's former territory in 1992. The district court granted summary judgment for Du Pont on the ground that the contract unambiguously confined Wright's entitlement to commissions to orders placed while the contract was in effect.

■ There is no doubt that Wright's entitlement to commissions was limited to a percentage of the invoice price of fishing products that Du Pont actually shipped in Wright's territory. But the contract does not specify what date they must be shipped by in order to entitle Wright to commissions. Since Wright's work for Kmart (by far Du Pont's largest customer for fishing products in Wright's territory) was completed before any orders growing out of that work were sent to Du Pont, accepted, and the goods shipped, it is not obvious that if the parties had thought about the matter they would have cut off the right to commissions at the date of termination of the contract. They *might* have done so. After this litigation brewed up, Du Pont changed its contracts with its manufacturer's reps to add an explicit provision that the goods must be shipped during the term of the contract for the rep to

obtain compensation. Alternatively, however, the parties might have followed the pattern in *AM International, Inc. v. Graphic Management Associates, Inc.*, 44 F.3d 572 (7th Cir.1994), where the contract specified order and shipping dates after which entitlement to royalty would cease.

■ Du Pont gets some support from the fact, not contested by Wright, that Wright itself had received commissions on shipments made by Du Pont to customers in Wright's territory beginning on the very first day that Wright became Du Pont's rep, even though Wright's own efforts could not have contributed to those shipments since they had been made pursuant to orders placed before Wright became Du Pont's rep, let alone began promoting its products. But we do not know the terms of Du Pont's contract with Wright's predecessor. And Wright gets some support from the doctrine of "procuring cause," a common law doctrine that—Du Pont to the contrary notwithstanding—is securely a part of the law of Indiana. *Barney v. Yazoo Delta Land Co.*, 179 Ind. 337, 345, 101 N.E. 96 (1913); *Wright Mfg. Corp. v. Scott*, 172 Ind.App. 154, 360 N.E.2d 2, 8 (1977); *Colonial Mortgage Co. of Indiana, Inc. v. Windmiller*, 176 Ind.App. 535, 376 N.E.2d 529 (1978); *Abex Corp. v. Vehling*, 443 N.E.2d 1248, 1255 (Ind.App.1983); *Bishop v. Sanders*, 624 N.E.2d 64, 67 (Ind.App. 1993). The doctrine is that, in the absence of a contrary agreement, an agent is entitled to be compensated by his principal for a deal of which the agent is the "procuring cause," even if he has been cut out of the deal, preventing him from doing the work for which the agency contract entitled him to be compensated. *Milwaukee Auction Galleries, Ltd. v. Chalk*, 13 F.3d 1107, 1110 (7th Cir. 1994). An aspect of the more fundamental contract doctrine that one party to a contract is not permitted to deprive the other of his remedy for breach by preventing the other from completing his agreed-upon performance, *Stephenson v. Frazier*, 399 N.E.2d 794, 798 (Ind.App.1980); *Ethyl Corp. v. United Steelworkers of America*, 768 F.2d 180, 185 (7th Cir.1985); 2 E. Allan Farnsworth, *Farnsworth on Contracts* § 8.6, pp. 379–80 (1990), the doctrine of procuring cause stands

as well for the equally fundamental proposition that a party to a contract will not be permitted to take steps designed to prevent the other party from being compensated for the performance that he has already rendered. See *Charter Oak Fire Ins. Co. v. Color Converting Industries Co.,* 45 F.3d 1170, 1176 (7th Cir.1995). Du Pont's contract with Wright contemplated that Wright would be compensated, in the form of commissions on orders made by Du Pont within Wright's territory, for Wright's efforts to promote Du Pont's fishing products. There is no indication that Wright failed to perform its part of the bargain, and it would be a little odd if the contract were intended to allow Du Pont to take advantage of the fact that Wright was required to perform before Du Pont, that is, to perform before being paid.

The doctrine of procuring cause shows that any presumption that contracting parties' mutual obligations are at an end when the contract expires cannot be maintained without careful qualification. See *Bidlack v. Wheelabrator Corp.,* 993 F.2d 603, 606–07 (7th Cir.1993) (en banc) (lead opinion). Which is not to suggest that we can conclude with any confidence that Du Pont's obligations *did* outlast the expiration, let alone that they outlasted it by a full year, as Wright contends. The doctrine of procuring cause creates a default term, which is to say a term that a court plugs into a contract to fill a gap in a way the court thinks the parties would have done had they thought about it. It is not a mandatory term, and the parties can change it by implication as well as expressly. Because of the difficulty of relating particular sales to particular marketing efforts (remember that Wright unlike a broker was not doing the actual selling), the parties may have preferred the rough and ready method of compensating the rep with commissions on all shipments made while the contract was in force, even if this meant sometimes paying one rep commissions for orders actually procured by another. We do not know but it is a sufficiently plausible speculation to prevent Wright from winning the case merely on the basis of the doctrine of procuring cause. Nor is it clear that the doctrine supports the particular remedy that

Wright seeks, which is a commission on all orders shipped in 1992 without proof that any of them originated from Wright's marketing efforts.

This is one of those cases where, try as we will, we can neither figure out the meaning of the contract from its language and the uncontested background facts nor invoke a default rule to resolve the controversy. The controversy thus cannot be resolved without resort to extrinsic evidence. Maybe there is a custom in the fishing-products trade that would allow Wright to claim commissions on orders that it can show grew out of its marketing efforts. Maybe the negotiating history of the contract between Wright and Du Pont can illuminate the parties' intentions with respect to orders shipped after the end of the contract. These are areas for further exploration in the district court. Summary judgment was premature. The judgment for Du Pont is vacated and the case is remanded for further proceedings consistent with this opinion.

VACATED AND REMANDED.