Michael Alan GADSBY,
Plaintiff–Appellant,

v.

NORWALK FURNITURE
CORPORATION, Defendant–Appellee.

No. 95–1507.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 29, 1995.

Decided Dec. 13, 1995.

Rehearing and Suggestion for Rehearing
En Banc Denied Jan. 29, 1996.

Ayesha S. Hakeem, Chicago, IL, David L. Lee (argued), Tomes, Lee & Dvorak, Chicago, IL, for Plaintiff–Appellant.

Donald C. Clark, Jr., Jennifer S. Holloway (argued), Clark & Degrand, Chicago, IL, for Defendant–Appellee.

Before CUMMINGS, FLAUM and MANION, Circuit Judges.

CUMMINGS, Circuit Judge.

Michael Alan Gadsby worked for Norwalk Furniture Corporation as a commissioned sales representative from 1984 until his termination in 1990. By 1990, Gadsby was earning approximately $235,000 annually in commissions from his sales in the Chicago market. After Gadsby's termination, Norwalk continued its sales in Chicago but discontinued its commission payments to Gadsby. Among other claims, Gadsby alleged in the district court that Norwalk breached his Sales Representative Agreement by failing to pay him commissions after termination and that Norwalk discriminated against him because of his age. The district court entered summary judgment in favor of Norwalk on these two claims and dismissed the others. For the following reasons, we affirm.

## I.

Norwalk is an Ohio corporation in the business of manufacturing and selling furniture. In December 1984, Gadsby entered into a Sales Representative Agreement ("Contract") with Norwalk to sell Norwalk's furniture in exchange for sales commissions. Gadsby was Norwalk's sole representative in the Chicago metropolitan sales area, and he increased annual sales in that area from $779,000 in 1984 to $4,800,000 in 1990. There is substantial evidence that Norwalk was pleased with Gadsby's performance until his termination in 1990, including increasingly high rankings among Norwalk's salesmen and handwritten compliments from management. Nonetheless, Norwalk claims that Gadsby lacked a good working relationship with Smithe Furniture Company, a major Chicago account, and that Gadsby had a problem with disclosing confidential information. Norwalk also claims that Gadsby had an abrasive personality.

Gadsby did only "special order" selling for Norwalk, meaning that Gadsby would procure floor space at a retailer and provide samples of Norwalk's products and copies of Norwalk's catalog. When a customer ordered furniture from the retailer, an order would be sent to Norwalk and Norwalk would manufacture and ship the item within 30 days. The salesman's job was mainly complete once he had procured the floor space and placed the samples at the retail store. Gadsby received a straight five-percent commission on furniture ordered, which was paid on the 10th of the month after the order was "on the books"—meaning Norwalk had received and acknowledged it—and the merchandise was shipped.

The Contract allowed either party to terminate the relationship, without reason, by giving 30 days' notice. In September 1990, Norwalk informed Gadsby that it was giving him 30 days' notice before terminating the Contract. With regard to commissions payable after termination of the Contract, the Contract stated that, "if this agreement is terminated by the Company, the Company shall pay commissions when and as earned on all orders entered." (Contract ¶ 3(f)). The company interprets this language to mean that it must pay the representative for all sales entered, but not necessarily shipped, that were on its books prior to the last day of the 30-day notice period. According to Norwalk, this policy allows a terminated representative 30 days to get all orders on which he has worked onto the books so that he can earn commissions on those orders. Thus Norwalk sent Gadsby a final check for commissions earned up to and including October 14, 1990.

Gadsby was 42 years old when Norwalk terminated the Contract. After the termination, Gadsby filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") stating that he had been discriminated against because, *inter alia*, "[y]ounger sales representatives with sales much lower than mine have been retained by [Norwalk]." Norwalk responded to the EEOC, stating that Gadsby was not an

"employee," that Gadsby had a poor relationship with Smithe Furniture, that he was not a "top representative," and that the average age of its sales representatives was 41.89 years. Norwalk further claims on appeal that it has terminated sales representatives younger than 40 and that it has terminated representatives even though their sales were satisfactory.

The EEOC dismissed the Charge for lack of "jurisdiction to investigate." Gadsby then filed suit against Norwalk and Smithe Furniture in Illinois state court, stating claims for breach of contract, age discrimination, promissory estoppel, wrongful discharge, restitution, and interference with prospective advantage; Gadsby also sued Smithe Furniture alleging interference with contract. The state court dismissed all but the age discrimination and promissory estoppel claims. When Gadsby settled with Smithe Furniture, creating diversity, Norwalk removed the case to federal district court. The district court granted Gadsby's motion to reconsider the dismissal of the breach-of-contract claim and permitted him to file an amended complaint. The court ultimately dismissed the promissory estoppel claim and granted Norwalk's motions for summary judgment on the age discrimination and breach-of-contract claims. The court also denied Gadsby's cross-motion for summary judgment on the breach-of-contract claim. This appeal followed.

Gadsby first asks this Court to review the district court's grant of summary judgment in favor of Norwalk on the breach-of-contract claim as well as the denial of Gadsby's cross-motion for summary judgment. Second, Gadsby argues that the district court improperly entered summary judgment against him on the age discrimination claim. Finally, Gadsby argues that the claims for promissory estoppel, restitution, interference with prospective advantage, and wrongful discharge were improperly dismissed. We will address each of these arguments in turn.

■ Our jurisdiction is premised on 28 U.S.C. § 1291. Summary judgment is reviewed de novo, with all evidence submitted and the legitimate inferences to be drawn therefrom viewed in the light most favorable to the non-moving party. *East Food & Liquor, Inc. v. United States,* 50 F.3d 1405, 1410 (7th Cir.1995). The grant of a motion to dismiss is also reviewed de novo, with all of the facts alleged in the complaint and any inferences reasonably drawn therefrom viewed in the light most favorable to the plaintiff. *Caldwell v. City of Elwood,* 959 F.2d 670, 671 (7th Cir.1992).

## II.

### A. Breach of Contract

Gadsby makes two arguments that Norwalk has wrongfully failed to pay him commissions after termination. First, he argues that he is entitled to commissions as the procuring cause of sales made from samples and catalogs that he placed at his retail accounts. Alternatively, he argues that the Contract entitles him to commissions "on all orders entered" with no cutoff date.

■ The procuring cause doctrine states that in the absence of a contrary agreement, an agent is entitled to compensation from his principal for a transaction of which the agent is the procuring cause. *Harold Wright Co. v. E.I. Du Pont De Nemours & Co.,* 49 F.3d 308, 309 (7th Cir.1995). Gadsby argues that he is the procuring cause of sales for which he was not compensated, because sales made immediately prior to and after his termination were directly due to his procurement of floor space in Chicago retail stores and his placement of samples and catalogs in those stores. The district court correctly held, however, that the procuring cause doctrine is inapplicable. Under Ohio law, which governs the contract, the procuring cause doctrine does not apply if the contract between the parties expressly provides when commissions will be paid. See *Ullmann v. May,* 147 Ohio St. 468, 72 N.E.2d 63 (1947); *Davis & Tatera, Inc. v. Gray–Syracuse, Inc.,* 796 F.Supp. 1078, 1084 (S.D.Ohio 1992); see also *LaScola v. U.S. Sprint Communications,* 946 F.2d 559, 567 (7th Cir.1991). The contract in this case expressly provided for when commissions would be paid upon termination by Norwalk: "the Company shall pay commissions when and as earned on all orders entered." (Contract ¶ 3(f)).

Inclusion of this provision precludes application of the procuring cause doctrine. As we noted in *Harold Wright,* "[t]he doctrine of procuring cause creates a default term, which is to say a term that a court plugs into a contract to fill in a gap in a way the court thinks the parties would have done had they thought about it. It is not a mandatory term, and the parties can change it by implication as well as expressly." 49 F.3d at 310. Here the parties altered the procuring cause doctrine expressly. Thus Gadsby's argument is unpersuasive.

The cases Gadsby cites in support of the procuring cause doctrine are also unpersuasive in this case. Gadsby relies heavily on *Harold Wright,* but that case is easily distinguished because the contract at issue did not provide when commissions would be paid. *Id.* at 309. Further, we rejected application of the doctrine absent extrinsic evidence to determine the meaning of the contract in *Harold Wright. Id.* at 310. Similarly, the procuring cause doctrine was applied in *Richer v. Khoury Bros., Inc.,* 341 F.2d 34 (7th Cir.1965), and *Scheduling Corp. of Am. v. Massello,* 151 Ill.App.3d 565, 104 Ill.Dec. 944, 503 N.E.2d 806 (1987), only in the absence of express contractual provisions displacing the procuring cause rule. Also, Illinois law governed both cases. In *Publishers Resource, Inc. v. Walker–Davis Publications, Inc.,* 762 F.2d 557 (7th Cir.1985), another case decided under Illinois law, we awarded post-termination commissions based on the express language of the contract, not the procuring cause doctrine.

▮ Without the benefit of the procuring cause doctrine, Gadsby is left to argue that the language and structure of the Contract entitle him to post-termination commissions. Gadsby bases his argument on the fact that the Contract specifies five reasons for termination and five corresponding provisions for payment of post-termination commissions:

1. Termination due to Gadsby's reaching age 70: commissions paid "on all orders entered prior to the date of such termination." (Contract ¶ 3(i)).
2. Termination due to Gadsby's death or insolvency or bankruptcy: commissions paid "on all orders which have been entered on the books of the Company prior to such termination...." (Contract ¶ 3(h)).
3. Termination due to Gadsby's disability or incapacity: commissions paid "on all orders which have been entered on the books of the Company during the period of disability or incapacity...." (Contract ¶ 3(g)).
4. Termination due to Gadsby's resignation: commissions paid "only on orders shipped." (Contract ¶ 3(f)).
5. Termination by Norwalk: commissions paid "on all orders entered." (Contract ¶ 3(f)).

Gadsby points out that in the first three of these situations, the Contract contains a cut-off date: "entered prior to the date of such termination" in the first, "entered ... prior to such termination" in the second, and "entered ... during the period of disability" in the third. However, in the fifth—the situation in this case—the contract contains no cutoff date. Therefore, Gadsby argues, the structure of the Contract evinces an intent to allow on-going, post-termination commission payments. In other words, the parties incorporated the procuring cause doctrine into the Contract.

Gadsby's argument as stated has intuitive appeal, but its omissions are fatal. At the outset we note that absent express language to the contrary, a contract would not subject an employer to potential liability *ad infinitum.* Far from including such express language, this Contract clearly mandates a complete end to the relationship upon termination by either party. First, the argument ignores the structure of the Contract's termination provisions. The first three types of terminations are contained in separate paragraphs, but the last two—termination by the company and by Gadsby—are contained in a single paragraph, Paragraph (f), which is immediately preceded by the provision that allows termination with 30 days' notice. Thus Paragraph (e) tells the parties how to terminate the Contract and Paragraph (f) tells the parties how such a termination will affect commissions:

(e) * * * Either party to this agreement may terminate the same, without reason, upon thirty (30) days' notice in writing to the other party.

(f) That if this agreement is terminated by resignation of the Commission Sales Representative, the Company shall pay commissions when and as earned only on orders shipped; if this agreement is terminated by the Company, the Company shall pay commissions when and as earned on all orders entered. (Contract ¶¶ 3(e), (f)).

Read together, the absence of an express cutoff date in Paragraph (f), unlike Paragraphs (g), (h), and (i), is perfectly understandable: the cutoff date naturally flows from the 30–day notice provision in the previous paragraph. After each clause in Paragraph (f), the words "during the 30–day period prior to termination" is understood.

Second, Gadsby's argument makes the express distinction in Paragraph (f) between "orders shipped" and "orders entered" superfluous. Gadsby notes that the first three types of terminations listed above contain cutoff dates, but the fifth does not. He ignores the fact that the fourth—termination by Gadsby—also does not. Thus applying Gadsby's reasoning to both the fourth and fifth types of terminations, Gadsby would continue receiving post-termination commissions on all orders that he procured regardless of whether he or Norwalk terminated the Contract. This interpretation defeats the clear language of the Contract, which distinguishes between commissions on "orders shipped" for terminations by Gadsby and commissions on "orders entered" for terminations by Norwalk. The only possible way to give effect to this distinction is to acknowledge the obvious relation between Paragraphs (e) and (f).

Finally, though we are sufficiently persuaded by the language and structure arguments, we note that Gadsby also fails to explain why the Contract would have been drafted to be more generous to a sales representative who quits or is fired than to one who retires, dies, or experiences a disability. Common sense dictates that an employment contract would, more likely than not, treat terminated employees and employees who quit more harshly than those who discontinue their relationship with the employer due to circumstances beyond their control.

■ Gadsby points to nothing under Ohio law that would lead us to a different conclusion. Ohio courts "presume that the intent of the parties to a contract resides in the language they chose to employ in the agreement" and "[w]hen the terms in a contract are unambiguous, courts will not in effect create a new contract by finding an intent not expressed in the clear language employed by the parties." *Shifrin v. Forest City Enters., Inc.*, 64 Ohio St.3d 635, 597 N.E.2d 499, 501 (Ohio 1992). The language employed by Norwalk and Gadsby is sufficiently clear that we need not imply an intention contrary to the language of the Contract.

Gadsby's reliance on *Harold Wright, supra,* for his contract argument is unpersuasive. In that case, Wright was an independent manufacturer's representative for Du Pont who was given responsibility for promoting the purchase of Du Pont's fishing products. Their contract provided that Wright receive commissions from Du Pont "on those orders we [Du Pont] accept and ship." Du Pont terminated Wright at the end of 1991 and refused to pay commissions on products shipped thereafter. We reversed the district court's entry of summary judgment in favor of Du Pont:

> This is one of those cases where, try as we will, we can neither figure out the meaning of the contract from its language and the uncontested background facts nor invoke a default rule to resolve the controversy. The controversy thus cannot be resolved without resort to extrinsic evidence.

49 F.3d at 310. The difficulty in *Harold Wright* was two-fold: first, the contract did not specify the proper cutoff date by which the orders had to be shipped; second, Wright's obligation under the contract (to promote sales) was complete before any orders were received or goods shipped. Gadsby correctly notes that *Harold Wright* is analogous as to the second of these difficulties. Gadsby, like Wright, was obligated to fully perform under the contract well before

Norwalk's obligation to pay commissions kicked in. However, Norwalk correctly notes that its contract, unlike the contract in *Harold Wright,* does specify the proper cut-off date by which orders had to be entered. As stated above, when Paragraph (f) is read in conjunction with Paragraph (e), it is clear that orders had to be entered during the 30–day period prior to termination.

██ Gadsby makes too much of our reversal of summary judgment in *Harold Wright.* The excerpt above demonstrates that the decision was based entirely on our conclusion that extrinsic evidence was necessary, that "[s]ummary judgment was premature." 49 F.3d at 310.[1] Under Ohio law, "[o]nly when the language of a contract is unclear or ambiguous, or when the circumstances surrounding the agreement invest the language of the contract with a special meaning will extrinsic evidence be considered in an effort to give effect to the parties' intentions." *Shifrin,* 597 N.E.2d at 501. Gadsby is unable to show either that the language is ambiguous or that special circumstances surrounded the Contract.

### B. Age Discrimination

The district court entered summary judgment against Gadsby on his Age Discrimination in Employment Act ("ADEA") claim because he failed to present direct or circumstantial evidence of discrimination and because he failed to make out a prima facie case of discrimination. Gadsby argues that the district court erred on both counts.[2]

██ A plaintiff may prove age discrimination in two ways. One way is to present direct or circumstantial evidence that age was the determining factor in plaintiff's discharge. *Anderson v. Baxter Healthcare Corp.,* 13 F.3d 1120, 1122 (7th Cir.1994). Gadsby argues that he has presented suffi-

cient direct and circumstantial evidence by alleging, first, that Norwalk's sales representative contracts called for termination when the sales representative reached age 65 or 70 and, second, that a Norwalk manager told a 63–year–old sales representative that "if he didn't retire this time, he would probably be let go." Both allegations are insufficient to show that age was the determining factor in Gadsby's termination. As to the first, at the time the termination provisions were drafted, they were legal under ADEA jurisprudence. In any event, the provisions have absolutely no bearing on Gadsby, who was fired at age 42. Further, Gadsby has not shown that Norwalk ever enforced the provisions, and the facts show that Norwalk has had sales representatives over age 70. The district judge correctly noted that the "mere presence of such a term in a contract, without an actual adverse employment action taken on the basis of age, is not age discrimination." As to the second, the alleged comment is too ambiguous regarding age. For example, as the district court noted, it could mean that the sales representative needed to be terminated for a legitimate reason, but Norwalk preferred that he simply retire. In addition, the comment was made in 1985 and is too remote in time to constitute evidence of discrimination in Gadsby's case.

██ The second method a plaintiff may use to establish age discrimination is set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The *McDonnell Douglas* burden-shifting analysis requires that a plaintiff initially establish a prima facie case. If established, the prima facie case creates a rebuttable presumption of discrimination, and the burden of production shifts to the defendant to offer a legitimate, nondiscriminatory reason for the adverse employment action. If defendant meets the burden, plaintiff must

---

1. Gadsby also relies on *Publishers Resource, supra,* for his contract argument. In that case, we found that plaintiff was entitled to post-termination commissions based on the contract. The case is distinguishable, though, because the contract in *Publishers Resource* unambiguously entitled plaintiff to "commissions on all advertising contracts in effect on the effective date of termination throughout the life of the contracts to a maximum of 12 months from the termination

date...." 762 F.2d at 560. Unfortunately, Gadsby's contract was not nearly as explicit.

2. Norwalk argues on appeal that Gadsby was not an "employee" protected by the ADEA. Because we find that Gadsby neither presented direct or circumstantial evidence of discrimination nor made out a prima facie case, we need not reach Norwalk's argument.

then demonstrate that the employer's articulated reasons are a pretext for discrimination. *Anderson*, 13 F.3d at 1122. The parties' primary disagreement concerns the requirements of the prima facie case, and we agree with the district court that this case can be disposed of on Gadsby's failure to make out a prima facie case.

We have stated that a prima facie case is established if the plaintiff shows all of the following: (1) that he was a member of the protected class (age 40 or over); (2) that he was meeting his employer's legitimate expectations; (3) that he was discharged or demoted; and (4) that the employer sought a replacement for him. 13 F.3d at 1122. Only the fourth factor is at issue here. It is undisputed that Norwalk did not retain another sales representative for the Chicago area until over 18 months after Gadsby's termination, which according to Norwalk prevents Gadsby from making out a prima facie case. See *Lilley v. BTM Corp.*, 958 F.2d 746, 752 (6th Cir.1992) (plaintiff failed fourth factor where he was not replaced for nine months), certiorari denied, 506 U.S. 940, 113 S.Ct. 376, 121 L.Ed.2d 287. Gadsby argues, citing *Kralman v. Illinois Dep't of Veterans' Affairs*, 23 F.3d 150 (7th Cir.1994), certiorari denied, ——— U.S. ———, 115 S.Ct. 359, 130 L.Ed.2d 313, that the fourth factor in the prima facie case only requires plaintiff to show that he was treated worse than someone younger. Thus, Gadsby argues, he satisfied the fourth factor since Norwalk did not terminate younger sales representatives with sales lower than his.

The proper formulation of the fourth factor has seen several variations in this Circuit. The variations are understandable given the different types of age discrimination cases that arise. For example, *Kralman, supra,* was a failure-to-hire case. We held that the plaintiff made out a prima facie case where he showed that the defendant ultimately hired a younger employee. Hiring cases are inherently different than termination cases such that the concept of "replacement" as part of the prima facie case would be nonsensical. Thus Gadsby's reliance on the fact that *Kralman* did not require *replacement* by a younger employee is unpersuasive.

Gadsby's citation to reduction-in-force ("RIF") cases is also unpersuasive. In *Collier v. Budd Co.*, 66 F.3d 886 (7th Cir.1995), for example, we held that the plaintiff need only show that younger employees were treated more favorably, but that holding was based on the distinct nature of RIF cases:

> In RIF cases, we do not require a plaintiff to prove that he has been replaced by a younger employee. Generally, when a company reduces or restructures its workforce, it does not simply hire a new person to fill the discharged employee's old position. Rather, as was the case here, jobs are often consolidated and/or work is shifted to other existing employees. Thus ... the discharged employee has not truly been replaced by anyone.

*Id.* at 890; see also *Roper v. Peabody Coal Co.*, 47 F.3d 925 (7th Cir.1995). The concurrence finds the RIF cases analogous to the present case, stating that in the one-person-discharge/no-replacement situation, the fact that younger employees are treated more favorably raises an inference of discrimination substantially equal to the same inference we recognize in RIF cases. There is good reason to doubt this proposition and therefore we decline to hold that the RIF standard applies in single-discharge cases such as this.

In an RIF case, the inference of discrimination raised by the more favorable treatment of younger employees (typically the act of not firing them) is premised on some degree of fungibility between the plaintiff's job and the younger employee's job. A mechanic terminated in an RIF case could not make a prima facie case because a younger chemist was retained. As the reasoning in cases like *Collier* demonstrates, the fungibility of jobs is implicit when the terminated employee's responsibilities are absorbed by other employees. The inference of discrimination comes from the belief that the employer selected the plaintiff for termination based on age from a group of employees who were equally qualified for termination based on criteria other than age. In a single-discharge case where fungibility among jobs is not demonstrated, no similar age-based selection process can be presumed and the

inference of discrimination is necessarily much weaker. Therefore we agree with the concurrence only to the extent that the inference might be equivalent where one employee is discharged and his responsibilities are absorbed by other employees, which essentially makes the single discharge a mini-RIF. But this is not such a case. Gadsby was a commissioned sales representative whose primary responsibility was expanding Norwalk's sales in the Chicago market, and there is no evidence that his responsibilities were shifted to or absorbed by other Norwalk sales representatives. Further, Gadsby was the only Norwalk representative in the Chicago area. This case is unlike a traditional RIF case as described in *Collier*, even on a small scale. We are therefore unable to agree with the concurrence in adopting a general rule that the inference of discrimination in an RIF case is always substantially equal to the inference in a single-discharge/no-replacement case. In any event, because we hold below that Gadsby cannot even meet the less stringent RIF standard, this case presents no occasion for finally deciding the issue.

In this Court's previous discharge cases, the fourth factor has seen several variations, from requiring that defendant replace plaintiff, *Grohs v. Gold Bond Bldg. Prods.*, 859 F.2d 1283, 1286 (7th Cir.1988), certiorari denied, 490 U.S. 1036, 109 S.Ct. 1934, 104 L.Ed.2d 405, or seek a replacement for plaintiff, *Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1039 (7th Cir.1993), to requiring that defendant treat others outside the protected class more favorably. *Darnell v. Target*

*Stores*, 16 F.3d 174, 177 (7th Cir.1994). But Gadsby has failed to produce, and we have been unable to find, a discharge case which held that the fourth factor was satisfied upon a showing less than actual replacement by a younger employee.[3] In *Darnell*, for example, which supplies the most permissive formulation, the case actually turned on plaintiff's failure to prove constructive discharge.

As stated above, it is not necessary to decide whether plaintiffs must prove actual replacement in a single-discharge case. Regardless of the proper formulation, Gadsby fails to show that he was treated less favorably than younger employees. The concurrence finds that Gadsby meets the "treated less favorably" standard because he has presented evidence that younger salesmen, whose objective sales performance and overall ranking were substantially beneath his, were retained. This evidence is insufficient because it fails to show that younger employees were less objectively qualified salesmen than was Gadsby. First, comparing Gadsby's sales figures in Chicago to sales figures in other territories is like comparing apples and oranges, especially without additional evidence regarding the nature and size of the other sales territories.[4] The thrust of Gadsby's argument regarding sales figures, and properly so, is that Gadsby far out-performed his predecessor in the Chicago market. That is irrelevant here. Second, the ranking system Gadsby relies on was discontinued one year prior to his termination. It is primarily in his final year that Norwalk claims Gadsby's behavior ultimately led to

3. Another formulation appeared in *Monaco v. Fuddruckers, Inc.*, 1 F.3d 658, 661 (7th Cir.1993), where we said plaintiff must establish that "the discharge occurred under circumstances which gave rise to an inference of age discrimination." The formulation is certainly more permissive than one requiring actual replacement, but the case did not turn on the fourth factor. Rather, we accepted the district court's assumption that plaintiff was replaced by a younger employee for establishing a prima facie case. *Id.*

4. We also note that Gadsby's phenomenally high sales figures for the Chicago area are almost entirely due to a single client: in 1990, of $4,800,000 in total sales, $4,268,106 was to Smithe Furniture. This fact only makes it more difficult for this Court to compare Gadsby's objective qualifications with those of sales representatives in other territories. Gadsby fails to provide comparison evidence regarding, for example, overall number of clients or number of furniture stores in a given territory that do and do not carry Norwalk samples. A sales representative in a smaller territory that has achieved 100% saturation may well be more qualified than Gadsby if Gadsby has failed to saturate 90 percent of the Chicago market. Comparing sales representatives in entirely different territories is not like comparing assembly line workers. Thus additional evidence such as this was necessary to enable this Court to find that Norwalk retained younger, less objectively qualified salesmen.

his termination;[5] thus we cannot assume that Gadsby's ranking would have remained unchanged in 1990. The evidence is insufficient to provide this Court with a basis for comparing Gadsby's objective qualifications with those of younger Norwalk employees.

Thus Gadsby ultimately must rely on the fact that younger sales representatives were not terminated. But it simply cannot be enough in a termination case that the employer merely retain younger employees. If that were enough, practically any terminated employee in the protected class could make out a prima facie case of age discrimination since most companies will retain at least some employees under age 40. Accordingly Gadsby has failed to satisfy even the more permissive formulation of the fourth factor in the prima facie case. We therefore, unlike the concurrence, do not address the remainder of the *McDonnell Douglas* formula.

## C. Additional Claims

 The district court properly dismissed Gadsby's other claims. Gadsby has provided no persuasive reasons for departing from the general rule that promissory estoppel is unavailable where an express contract exists. The cases cited by Gadsby involve oral at-will employment relationships. Therefore, we agree with the district court that the existence of the contract required dismissal of the promissory estoppel claim. Gadsby's brief merely states that "the wrongful-discharge count should be similarly analyzed [to the promissory estoppel count] and the same result should be reached." We will not consider the wrongful discharge claim on appeal because Gadsby, in violation of Fed.R.App.P. 28(a)(6), has failed to cite any relevant authority or adequately articulate his argument for reversal. We will also not consider the claim for interference with prospective advantage because Gadsby has failed to provide any grounds for reversing the dismissal. Gadsby's claim for restitution was also properly dismissed in light of the express contract between the parties. Gadsby has not provided any persuasive argu-

ments for departing from the general rule that restitution is unavailable where an express contract governs the parties' relationship and where there is an adequate remedy at law.

## III.

For the foregoing reasons, we conclude that the district court properly entered summary judgment in favor of Norwalk on both the breach-of-contract/procuring cause count and the age discrimination count. Gadsby's cross-motion for summary judgment on the breach-of-contract count was also properly denied. Gadsby appeared not to take the remaining claims seriously on appeal, but in any event we hold that they were properly dismissed. The judgment of the district court is therefore affirmed.

FLAUM, Circuit Judge, concurring in the judgment. I concur in the judgment of the court. I write separately because I cannot agree with the majority's analysis of what constitutes a prima facie case under *McDonnell Douglas* and the ADEA.

## I.

The majority opinion sets forth the first three requirements of a prima facie age discrimination case as follows:

(1) the employee was a member of the protected class (age 40 or over); (2) the employee was meeting the employer's legitimate expectations; and (3) the employee was discharged or demoted. These elements are well-established. *See Sirvidas v. Commonwealth Edison Co.,* 60 F.3d 375, 377 (7th Cir.1995); *Anderson v. Baxter Healthcare Corp.,* 13 F.3d 1120, 1122 (7th Cir.1994). As to the fourth factor, the majority notes the various formulations this circuit has employed; however, it determines that it is unnecessary to delineate the exact requisites of the fourth element in a discharge situation in order to resolve this case. Specifically, the majority declines to decide whether the fourth factor is satisfied only by actual replacement (which did not occur here) or

customer a valid consideration for his termination and helps demonstrate why Gadsby's behavior in 1990, rather than 1989, is so critical.

whether a showing that the protected employee was treated less favorably than younger employees is sufficient. The majority concludes that resolution of this issue is unnecessary because it finds that, even under the more permissive formulation, Gadsby's evidence is insufficient. Hence, the court finds that Gadsby has failed to establish a prima facie case of age discrimination. I respectfully disagree.

It cannot be denied that the first and third elements of the prima facie case are satisfied in this case. Gadsby was 42 years old when he was discharged by Norwalk. In my opinion, Gadsby has also satisfied the second element—that he was meeting Norwalk's legitimate expectations.[1] As the majority notes, "there is substantial evidence that Norwalk was pleased with Gadsby's performance until his termination in 1990...." *Supra* at 1326. Gadsby presents ample objective evidence—in the form of dramatically increased sales, high overall ranking among salespersons,[2] and numerous handwritten compliments from Norwalk management—that he was more than meeting Norwalk's expectations for the job he was hired to perform, i.e., selling Norwalk furniture to customers in the Chicago area. Norwalk essentially admits this, as it does not claim that sales performance was a reason for Gadsby's discharge. Consequently, Gadsby's evidence demonstrates that he was meeting Norwalk's legitimate expectations.

At this prima facie case stage, Norwalk fails to present any objective, contemporaneous evidence demonstrating Gadsby's unsatisfactory performance (such as a non-favorable performance review or evaluation), which undermines Gadsby's substantial evidence of adequate performance. Norwalk simply points to evidence and testimony it has since gathered, which goes to the legitimate reasons—beyond his objective job performance—for which it claims it discharged Gadsby. Norwalk presents three reasons: 1) Gadsby's rude and abrasive personality, 2)

his problems disclosing confidential information, and 3) his deteriorating relations with an important customer (Smithe). Norwalk, however, can raise these explanations once the baton passes to it. Gadsby, in order to establish a prima facie case, should not be forced to anticipate every possible reason his employer could provide for his discharge and incorporate responses to all of these hypothetical reasons into his prima facie case. Interpreting the legitimate expectations prong of the prima facie case this broadly would essentially destroy the burden-shifting feature of *McDonnell Douglas,* by conflating the *employee's* burden of proving satisfaction of legitimate expectations with the *employer's* burden of providing a legitimate, nondiscriminatory reason.

This brings us to the fourth prong of the prima facie case. The majority found that it need not accept or reject Gadsby's argument that, where the plaintiff could demonstrate that he was treated less favorably than younger employees, a showing of replacement was unnecessary to satisfy the fourth prong. I would accept Gadsby's argument and hold that, in a non-replacement situation, a showing that the discharged plaintiff was treated less favorably than younger employees is sufficient to satisfy the fourth prong of the prima facie case. As the majority notes, we have sometimes formulated the fourth factor as requiring replacement by a younger person. *Supra* at 1332. However, we have also recognized the need for flexibility in establishing the requirements of the *McDonnell Douglas* prima facie case: "The prima facie case ... is a flexible standard that 'is not intended to be rigidly' applied." *Collier v. Budd Co.,* 66 F.3d 886, 890 (7th Cir.1995) (internal citation omitted); *Loyd v. Phillips Brothers, Inc.,* 25 F.3d 518, 522–23 (7th Cir. 1994) (rigid adherence to formulaic prescriptions can block proper analysis). The prima facie case, particularly the fourth prong, must be adapted to the differing factual circumstances that give rise to age discrimina-

1. The majority does not express a view as to whether Gadsby met the legitimate expectations factor, apparently finding it unnecessary in light of its conclusion that the fourth factor could not be satisfied.

2. In 1989, the year before his discharge, Gadsby was ranked fourth out of twenty-nine salespersons. The ranking was based on a comparative evaluation of thirteen different categories.

tion claims. *See Collier,* 66 F.3d at 890; *Loyd,* 25 F.3d at 523.

For this exact reason, we have held in reduction in force ("RIF") cases that an employee need not prove replacement, but instead need only show that younger employees were treated more favorably. *See Collier,* 66 F.3d at 890–91; *Roper v. Peabody Coal Co.,* 47 F.3d 925, 926 (7th Cir.1995). This is because when a company reduces its workforce, it generally does not replace the discharged employees, rather positions are often consolidated and work is shifted to other existing employees. *Collier,* 66 F.3d at 890; *Oxman v. WLS–TV,* 846 F.2d 448, 455 (7th Cir.1988). In this context, we found that:

> an employer's retention of a younger employee either in the same job as the discharged plaintiff or in another job for which the plaintiff also was qualified gives rise to an inference of discrimination that is no weaker than the well-recognized inference created when an employer discharges an employee who is performing adequately and then seeks and/or obtains a [younger] replacement.

*Oxman,* 846 F.2d at 455 (quoting *Matthews v. Allis–Chalmers,* 769 F.2d 1215, 1223 (7th Cir.1985) (Flaum, J., concurring)). We therefore held that, in a RIF situation, a showing that younger employees were treated more favorably is enough to create a rebuttable presumption of discrimination sufficient to shift the burden to the employer. *Oxman,* 846 F.2d at 455. In essence, we recognized that employees discharged pursuant to a reduction in force cannot raise the inference of discrimination necessary to establish a prima facie case by showing replacement by a younger person, so we afforded them an alternative means.

Gadsby argues, citing our RIF cases, that the "treated less favorably" standard should apply in his situation, since he was not replaced by Norwalk.[3] The majority finds the

RIF cases "unpersuasive." *Supra* at 1331. However, I see no meaningful reason why the prima facie case in the situation where an employee is discharged and not replaced due to a reduction in force should be different from the situation where an employee is discharged and not replaced for some other reason. In both situations the discharged employee is unable to raise an inference of discrimination by showing replacement by a younger employee, because there is no replacement to consider. In the one person discharge/no replacement situation, the fact that younger employees are treated more favorably raises an inference of discrimination substantially equal to the same inference we recognize in RIF cases (and, which we held in *Oxman,* is no weaker than the inference raised where the employee is replaced by a younger person.) Therefore, because the same basic considerations are at issue in both situations, I believe logic requires that the elements of the prima facie case be the same. Hence, I would hold that in the situation where an employee is discharged and not replaced, a showing that younger employees were treated more favorably meets the fourth prong of the prima facie case.

The majority declines to adopt the treated less favorably standard as the general rule for single-discharge cases; however, it does agree that the inference of discrimination might be the same in the situation "where one employee is discharged and his responsibilities are absorbed by other employees...." *Supra,* at 1332. In the majority's view, the fact that the discharged employee's duties were shifted to other employees implies fungibility between the jobs of the discharged employee and the retained younger employee, which is necessary to draw the inference of discrimination. Concluding that the evidence in the instant case fails to show that Gadsby's duties were absorbed by other salespersons, the majority finds the treated

**3.** We note that Gadsby was apparently replaced by a 40–year–old for a short period of time some 18 months after Gadsby was terminated. Gadsby, however, does not make the argument that this "replacement" is sufficient to satisfy the fourth prong of the prima facie case. Apparently, he concedes that the passage of a significant

amount of time made the replacement insufficient for prima facie case purposes. He argues only that replacement is unnecessary if he can show less favorable treatment. Therefore, for purposes of this analysis, I assume that Gadsby was not replaced.

less favorably standard inapplicable in this case.

I agree with the majority that the inference raised by more favorable treatment of younger employees is premised on some degree of interchangeability between the discharged employee and the younger retained employees. The discharged plaintiff must demonstrate that he was qualified for the positions retained by the younger employees in order to show less favorable treatment. This was the basis for adopting the standard in *Oxman*. *See Oxman*, 846 F.2d at 455 (quoted above). Of course a chemist is not qualified for a mechanic position, and therefore could not prove less favorable treatment by showing retention of a younger mechanic. I therefore do not contest the majority's statement that, in a single discharge case, if the discharged employee and the retained employee are not interchangeable to a certain extent, the inference of discrimination is weak. The same, however, is true in the RIF scenario. Consequently, the majority's statements, in my view, do not comprise a meaningful reason to reject the treated less favorably standard in single-discharge/no-replacement cases; rather the majority's comments address whether that standard is satisfied in a particular case.

Turning to Gadsby's case, I believe that Gadsby has proven the necessary interchangeability between himself and the younger retained employees. First, I question the majority's apparent view that the only way to prove the necessary fungibility is to demonstrate that the plaintiff's duties were absorbed by other employees. For instance, if Norwalk no longer needed a Chicago salesperson, Gadsby could prove a degree of fungibility by showing he was fully qualified to be the salesperson in Milwaukee. More importantly, however, there is evidence that

Gadsby's responsibilities *were* shifted to other existing employees. Fred Leach, Norwalk's National Sales Manager, testified that members of Norwalk's management and other existing sales representatives alternated in covering the needs of customers in Gadsby's territory. Further, Norwalk did not claim as a reason for Gadsby's termination that a sales representative was no longer necessary for the Chicago area.

Finally, the majority holds that even if the more permissive standard applies, Gadsby's evidence is inadequate to show he was treated less favorably. However, in my judgment, Gadsby's evidence is sufficient to support the conclusion that younger, *less objectively qualified salespersons* were retained. I agree with the majority that comparing Gadsby's very impressive sales to those of salespersons with different size markets is difficult and not especially helpful on its own in evaluating relative performance among salespersons. However, Gadsby does present direct comparative evidence that in 1990 (the year he was fired), his sales on a month-end, year-to-date basis were consistently up 30 to 40 percent over the previous year, while Norwalk's 1990 sales from other territories were consistently down 1.5 to 5 percent. This is in addition to the fact that in 1989 (less than a year before he was terminated and the last year the ranking was available) his relative overall ranking among other sales representatives was fourth out of twenty-nine.[4] These facts, combined with Gadsby's "off the charts" sales amounts in his territory, his dramatic increase in sales over those of his predecessor, his increase in relative performance ranking over the years, and the management compliments he received in 1990,[5] make it a reasonable conclusion that Gadsby was more objectively qualified than the younger retained employees. This is

4. The majority gives this evidence no weight because Norwalk claims that it was primarily in 1990 that "Gadsby's behavior ultimately led to his termination; thus we cannot assume that Gadsby's ranking would have remained unchanged in 1990." *Supra*, at 1332–33. We should not assume, however, that Gadsby's ranking would have fallen substantially either. In my opinion, the 1989 ranking is sufficiently close in time to Gadsby's discharge that it should be considered evidence of his relative performance.

By completely disregarding the evidence, I believe the majority is inappropriately weighing the evidence on summary judgment.

5. In 1990 Gadsby received several written compliments from management, including: "FYI! You're # 1 after 1 month. Keeping [sic] popping those stock orders! Great Start Mike." (Jan., 1990); "Great Start" (Jan., 1990); "Still holding above the # Mike!" (May, 1990).

especially true since on summary judgment we construe all facts and reasonable inferences in favor of the non-moving party, i.e., Gadsby. *See Serfecz v. Jewel Food Stores,* 67 F.3d 591, 596 (7th Cir.1995).

Norwalk argues that Gadsby's evidence is insufficient to show Gadsby was treated less favorably because Gadsby fails to show that younger salespersons with similar customer relations problems, confidential disclosure problems, and abrasive personality problems were treated more favorably. However, for the reasons I discussed in the legitimate expectations context, I find this argument without merit; Gadsby should not be required to anticipate every reason Norwalk could come forward with in order to establish a prima facie case. It is enough that he demonstrates that younger, less objectively qualified individuals were retained, while he was fired. Therefore, in my opinion, Gadsby sufficiently raises an inference of discrimination and adequately meets the "treated less favorably" standard. I would find that Gadsby successfully set forth a prima facie case of age discrimination.

## II.

I concur in the judgment of the court, however, because Norwalk has alleged several non-discriminatory reasons for Gadsby's discharge, and I cannot say that Gadsby has sufficiently shown that all of these reasons are pretexts for age discrimination. Norwalk has offered three legitimate, non-discriminatory reasons for Gadsby's discharge: 1) that Gadsby had an abrasive personality and was rude; 2) that Gadsby often disclosed confidential information; and 3) that Gadsby's relationship with a major customer, Smithe Furniture, was deteriorating. The burden then shifts to Gadsby, who must prove that all of these reasons are pretextual; the employer needs only one legitimate reason to succeed on summary judgment. *See Russell v. Acme–Evans Co.,* 51 F.3d 64, 69 (7th Cir.1995). Gadsby must produce enough evidence from which a reasonable factfinder could infer that Norwalk's proffered reasons for Gadsby's termination are false and unworthy of credence. *See Sirvidas v. Commonwealth Edison Co.,* 60 F.3d 375, 378 (7th Cir.1994); *Courtney v. Biosound, Inc.,* 42 F.3d 414, 418 (7th Cir.1994). We need only look to Norwalk's first reason to see that Gadsby has not met this burden.

Norwalk's claim that Gadsby was rude and had an abrasive personality is based on two different sets of facts. First, Norwalk's National Sales Manager, Fred Leach, stated in his deposition that one reason Gadsby was fired was because he had been rude to the president of the company, Ed Gerken. Leach described a particular conversation during which Gadsby interrupted Gerken. Gadsby argues this reason is pretext, not because the incident did not occur, but because it was "inconsequential." Gadsby emphasizes Ed Gerken's testimony that he could not independently recall the details of the incident and Leach's testimony that Gadsby did not raise his voice, swear, or do anything physical during the conversation. Yet Gadsby ignores Gerken's further testimony that the incident "kind of characterized [Gadsby's] behavior at market, he frequently would interrupt conversations and barge in, so it would be hard for me to remember any specific time." Gadsby does not offer a response to this, except to argue that the alleged rudeness was not truly rude and should not have been taken seriously. As we have emphasized in the past, however, the essential question is not whether Gadsby was or was not actually rude and abrasive, but whether Norwalk honestly believed that Gadsby was rude. *See Sirvidas,* 60 F.3d at 377–78; *Russell,* 51 F.3d at 69. The fact that Norwalk may have made an incorrect determination or a bad business judgment does not prove that the reason given was a pretext for age discrimination. *See Kralman v. Illinois Dept. of Veterans' Affairs,* 23 F.3d 150, 156 (7th Cir.1994). There is undisputed evidence that at least two high level officers at Norwalk, Gerken and Leach, thought Gadsby was rude, and their examples are not so ridiculous that a jury could find their belief incredible. Gadsby's opinion (or ours) that his conduct should not be considered rude or sufficient to warrant discharge is not enough to rebut this evidence.

Leach also testified that Gadsby's "abrasive personality" had jeopardized certain ac-

counts and noted that several customers called in to complain about Gadsby. Gadsby again fails to present any evidence that specifically refutes the factual basis that certain customers called and complained about him; he only responds that this reason is pretextual because management had told him to "drop" the accounts, so the accounts were not jeopardized by his personality. Yet even if Gadsby did not endanger these specific accounts (because the accounts were not wanted), the fact that customers complained about Gadsby's personality is a sufficient basis for management to conclude that Gadsby had an abrasive personality and could jeopardize future accounts. Gadsby presents nothing to refute this and therefore fails to demonstrate a genuine issue of material fact as to whether he was discharged for his rude and abrasive personality.

In sum, because Gadsby has failed to present evidence that refutes Norwalk's basis for believing Gadsby was rude and abrasive, and because he cannot simply substitute his own judgment for that of Norwalk's management, a reasonable juror could not conclude that Norwalk's claim that Gadsby was rude and abrasive is not credible and is simply a pretext for age discrimination. Therefore, I concur in the judgment of the court.