Roland M. **ANDERSON**, Plaintiff,

v.

**LOCAL 165, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS and International Brotherhood of Electrical Workers, Defendants.**

No. 98 C 3515.

United States District Court,
N.D. Illinois,
Eastern Division.

Jan. 26, 2000.

Jerome F. Marconi, Jr., Jerome F. Marconi & Associates, Chicago, IL, for Roland M Anderson, plaintiff.

Elihu I Leifer, James E Rubin, Sherman, Dunn, Cohen, Leifer & Yellig, Washington, DC, Thomas W. Duda, Law Offices of Thomas W. Duda, Arlington Heights, IL, for Local 165 International Brotherhood of Electrical Workers, defendant.

John Joseph Toomey, Arnold & Kadjan, Chicago, IL, Elihu I Leifer, James E Rubin, Thomas W. Duda, Sherman, Dunn, Cohen, Leifer & Yellig, Washington, DC, for International Brotherhood of Electrical Workers, defendant.

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

In 1997, when Roland Anderson was fired from several position he held at his union, Local 165, International Brotherhood of Electrical Workers ("Local 165"), he was 58 years old and in poor health. Anderson alleges that he was induced to sign a "Medical Waiver" (the "waiver") to make him an independent contractor and thus protect Local 165 from whatever conditions arose out of Anderson's employment with the local. Immediately after it was signed, Donna Myron, resident representative at Local 165 of the International Brotherhood of Electric Workers (the "International"), directed Local 165 president Siemienas to tell Anderson that he was to vacate the premises forthwith. Anderson filed the age and disability discrimination lawsuit before me. The defendants move for summary judgement, which I deny, except for the retaliation claim against the International.

### I.

Anderson was an Illinois Bell and Ameritech electrician and an active unionist, a member of Local 165. In 1990 he was appointed chief steward. In 1996, Siemienas, then the newly elected Local 165 president, appointed Anderson to be his administrative assistant, press secretary, and the managing editor of Local 165's newsletter, *The Communicator.* These appointments were approved by the Local 165 executive board, and Anderson was paid accordingly. After a stroke, Anderson had to retire from Illinois Bell in January 1997 because he was restricted to sedentary work. He could not climb ladders, walk without difficulty, or lift more than ten pounds. He could not represent union members at grievance meetings because he had trouble speaking and understanding. Despite his physical and psychological limitations, however, there are no complaints in the record about his work for the union, and the defendants do not allege that he was not qualified to do his union jobs or was not performing them in a satisfactory way.

In February 1997, Anderson alleges that he was made aware of the waiver. Anderson claims that it was initially drafted by Paul Hoffman, the Local 165 accountant; the defendants say it was drafted by Anderson's friend William Murphy, a former Local 165 Treasurer who was employed by the local. For some unknown reason, Local 165 president Siemienas arranged to have Anderson's wife, Jan Anderson, sign the waiver. On February 23, 1997, Business Agent Johnetta Ryan, acting at Siemienas' direction, took the waiver to the Anderson's home. When Jan Anderson balked, Ryan told Roland Anderson that if his wife did not sign the waiver, he would not go back to work. She signed, but he did not until later. Although his wife's signature on his waiver ought in the ordinary course of things to have no legal effect, after she signed it, Anderson no longer received a monthly check corresponding to his chief steward's pay, and payroll taxes were no longer deducted from the check supported by the expense vouchers.

Local 165 president Siemienas showed the waiver to International representative Myron on April 28, 1997. She read it, and asked why it had been drafted, and expressed quite understandable doubts about its legality.[1] She gave a copy to Interna-

---

1. The defendants wisely do not argue that the waiver bars Anderson's right to sue.

tional Vice president Jerry O'Connor, and they discussed it. On April 30, 1997, Siemienas requested that Anderson sign the waiver. The next day, May 1, Myron called Siemienas and told him that Anderson had to vacate the union offices at that time. According to Myron, this was because the International Constitution and the Local 165 by-laws did not provide for an independent contractor position, and the Local 165 executive board and membership would have to approve paying Anderson. Anderson claims the real motive was discriminatory. The defendants say that in June 1997, Siemienas tried unsuccessfully to obtain Local 165 executive board approval to retain Anderson. Also "removed" at the same time was Murphy, age 64, whom Myron had discovered was being paid by Local 165 despite having lost his re-election bid in 1996.

Anderson subsequently filed charges at the Illinois Department of Human Rights. Anderson then met with Local 165 vice president Joan Waskowski at a restaurant. She asked him how he could sue the local. When he attempted to explain, she said she was glad that Anderson was made to sign "those papers" and she would see to it that he would never work in another local of the union again. He did not receive further work from Local 165 for which he applied in connection with his unemployment insurance eligibility even when work was available. For example, work he formerly did on the Local 165 computer system was performed instead by Judy Kelly, age approximately 38, and the local hired an outside contractor, Kathy Devine, age unknown, to work on *The Communicator* and made 30–year old Rick Bell the managing editor of that publication. None of these people are alleged to be in any way disabled. Anderson continued to pay union dues but never received another union card or any union publications.

**2.** For the ADA, 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding

## II.

I first consider arguments from each defendant that Anderson cannot sue them for discrimination. Local 165 argues that it was not covered by the ADA or the ADEA because it did not have enough employees.[2] Local 165 prepared between 70 and 110 W–2 forms for the ITS, according to its own accountant, including chief stewards, stewards, business agents, and secretaries. According to Local 165, only the three secretaries are "real" employees for purposes of ADA and ADEA coverage. The rest are elected or appointed union officials, and not employees, because they also worked for the company, and compensation was set forth in the Local's by-laws and not independently negotiated at arms' length with the individual.

Local 165 presents no authority that those are relevant factors that disqualify persons as employees. Part time employees can be employees for purposes of the discrimination laws, *see Ilhardt v. Sara Lee Corp.*, 118 F.3d 1151, 1155 (7th Cir.1997) (Pregnancy Discrimination Act context), and for someone to be an employee under the ADA or ADEA, his or her salary need not be independently negotiated rather than established in organizational by-laws or fixed in any other way. Local 165 satisfies the statutory requirements to be an employer under these statutes.

The International, for its part, argues that if Anderson has any complaint, it is against Local 165 and not against the International. It reasons that the International and Local 165 are separate legal entities, and the International is not liable for any wrongs committed by Local 165 merely because Local 165 is subject to rules and policies of the International. The International neglects to argue that it that was not Anderson's "employer" under the ADA or ADEA, so that argument is

calendar year. 42 U.S.C. § 12111(5)(A). The ADEA requires "twenty or more employees." 29 U.S.C. § 630(b).

waived. However, the International cannot be held liable for actions of local without evidence tying the International to the disputed events. *See Cleveland v. Porca Co.,* 38 F.3d 289, 296 (7th Cir.1994) (simple presence of International representative at meeting insufficient).

In this case, however, Anderson ties the International to the local's decision with evidence that International representative Myron actively participated in his termination. It also supports Anderson's claim that International "instigated, supported, ratified, or encouraged" the local's actions, *see Carbon Fuel Co. v. United Mine Workers,* 444 U.S. 212, 218, 100 S.Ct. 410, 62 L.Ed.2d 394 (1979) (standard for International liability in § 301 cases), and so is liable because it made the local its agent. Here, the evidence is that Myron, representing the International, ordered local president Siemienas to "remove" Anderson and stop his pay. *See Webster's Third New Int'l Dictionary* 1171 (1981) ("instigate: to goad or urge forward: set on: provoke, incite").

■ The International argues that it lacks sufficient connection with Anderson's termination to be liable because all it did was to direct Local 165's president that the terms of Anderson's employment would have to be approved by the Local 165 executive board and membership. But Anderson comes forth with evidence that Myron read not only read the waiver and discussed it with local president Siemienas, questioning its legality, but also, when it was signed, had Anderson and Murphy ordered out of their offices and stopped their pay. There is a material question of fact as to whether the International might have incurred ADA or ADEA liability on it own account or in virtue of an agency relationship, having waived, as I say, the claim that it was not his employer.

## II.

### A.

The defendants then address whether Anderson has made out the elements of his disability discrimination claim. Local 165 denies that Anderson is disabled within the meaning of the ADA. A disability is "(A) a physical or mental impairment that substantially limits one or more of the major life activities [such as working]; ... (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). Anderson indisputably had some difficulty talking, climbing a ladder or walking, and could not lift more than ten pounds. According to Local 165, the Supreme Court has held in two recent cases (to which it does not provide point cites) that as a matter of law these impairments can never be sufficient to establish disability. *See Albertsons, Inc. v. Kirkingburg,* 527 U.S. 555, 119 S.Ct. 2162, 144 L.Ed.2d 518 (1999); *Murphy v. United Parcel Service,* 527 U.S. 516, 119 S.Ct. 2133, 144 L.Ed.2d 484 (1999).

However, there is no such per se rule. In *Kirkingburg,* the Court said that I am to "determine the existence of disabilities on a case-by-case basis. The Act expresses that mandate clearly by defining 'disability' ... in terms of the impact of an impairment on 'such individual.'" 119 S.Ct. at 2169 (*citing* 42 U.S.C. § 12102(2)(A)). If Anderson's particular impairments did not substantially limit him in working or other major life activities, or that he was not regarded as so limited, Local 165 has not argued this, and so has waived the point. Indeed, the waiver itself strongly suggests that the defendants did regard him as disabled.

Local 165 argues that Anderson cannot show that he was fired because of his disability. As Anderson argues, however, the waiver itself is direct evidence of discrimination, plausibly showing that he was regarded as disabled and was fired for that reason. The waiver made him an independent contractor, and Anderson alleges that it was drafted with an eye to protect Local 165 against whatever conditions arose out of his employment. Local 165 admits that Anderson was "removed" by local president Siemienas the day after he signed the waiver in response to a phone call from

International representative Myron. The timing is, to say the least, suspicious. Local 165 has no reply apart from the bald and implausible assertion that the waiver had nothing to do with its decision to fire Anderson. Local 165 asserts also that the waiver was drafted by Murphy, who held no official union position, although he too was employed by the union. This response is wholly irrelevant.

■ The International argues that Anderson's circumstantial evidence prima facie case fails because Anderson cannot show that he was replaced by someone not in the protected group and that similarly situated employees were treated better. *See Anderson v. Baxter Healthcare,* 13 F.3d 1120, 1122 (7th Cir.1994). Anderson was not replaced at all, the International argues, and the only similarly situated employee was Murphy, who was fired too. Anderson, however, offers evidence that his duties were redistributed to other employees. The Seventh Circuit has held that such redistribution will suffice for the "replacement" prong. *Bellaver v. Quanex Corp.,* 200 F.3d 485, 494 (7th Cir.2000) (*citing Wichmann v. Board of Trustees of Southern Ill. Univ.,* 180 F.3d 791, 802 (7th Cir.1999), *judgment vacated on other grounds,* —— U.S. ——, 120 S.Ct. 929, 145 L.Ed.2d 807 (2000)). Murphy, moreover, was not induced to sign a waiver, nor did he have his pay reduced because his wife, if he had one, was induced to sign a waiver. Even if Murphy was terminated for an innocuous reason, a rational jury might conclude in the circumstances that Anderson was fired for an invidious one. *See Wichmann,* 180 F.3d at 802.

### B.

■ The age discrimination claim can be addressed more briefly. Anderson has a bare-bones *McDonnell–Douglas* circumstantial evidence prima facie case. He was 40 or over, performed satisfactorily, and was terminated, and was replaced by someone younger. Bell, the new *Communicator* editor, was 30; Kelly, who took over Anderson's computer work, was 38.

The defendants argue that in a single discharge case like this, the question is whether similarly situated persons were more favorably treated, *see Gadsby v. Norwalk Furniture Corp.,* 71 F.3d 1324, 1331 (7th Cir.1995), but while the Seventh Circuit has held that "where fungibility among jobs is not demonstrated, ... the inference of discrimination is necessarily much weaker," *id.* at 1331–1332, that does not mean that the inference cannot stand. *See Bellaver,* 200 F.3d 485, 494; *Wichmann,* 180 F.3d at 802.

### D.

The defendants argue that Anderson was fired because of a legitimate nondiscriminatory reason, *viz.,* that his employment as an independent contractor was not authorized by the International Constitution, union policy, or Local 165's own bylaws. The defendants say that International officials Myron and O'Connor honestly believed this, which is why they directed local president Siemienas to remove him, and he did it because they told him to. Myron, however, is the key to this explanation, and she has trouble keeping her story straight. She said that Anderson and Murphy were fired when she "discovered" in 1997 that the International's Constitution and Local 165's bylaws did not provide for an independent contractor position. But she admitted that she knew as of July 1996 that Murphy, after losing the election, continued to be employed in the Local 165 office to train a new Treasurer although his position was not provided for in the International's Constitution or Local 165's by-laws. It does not seem to have disturbed Myron, moreover, that Local 165 president Siemienas hired an outside contractor, Kathy Divine, to perform work on *The Communicator* previously done by Anderson, who was removed purportedly because he was an independent contractor. There is also Myron's tacit approval of the waiver. She knew of it beforehand and had even questioned its legality, but did not speak to Anderson about its consequences or dis-

courage Local 165 president Siemienas from getting Anderson to sign it. Instead, she had Siemienas get rid of Anderson once it was signed. A reasonable jury might infer that she set him up.

■ These inferences would not be required, but they would be permitted. The jury's disbelief of the employer's proffered reason for the firing, together with the prima facie case and a "suspicion of mendacity," can by itself sustain a finding of intentional discrimination. *Sheehan v. Donlen Corp.*, 173 F.3d 1039, 1045–46 (7th Cir.1999) (*quoting St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)). In the circumstances a rational jury might suspect that Myron and Siemienas were lying about their reasons, and so find for Anderson. Summary judgment on the ADEA and ADA claims would therefore be inappropriate.

### III.

■ Finally I consider Anderson's retaliation claim. To establish a prima facie case of retaliation, Anderson must show that: (1) he engaged in statutorily protected activity; (2) he suffered an adverse employment action; and (3) there is a causal link between the two. *Wilson v. Chrysler Corp.*, 172 F.3d 500, 504 (7th Cir.1999). Anderson's case is that after he filed his charges, Local 165 vice president Joan Waskowski asked him how he could sue the union, stating that he would never work at any Union local again, and that he was unable to get any work at the local even though he was qualified nor issued a union card despite paying his dues. Local 165 argues that Anderson has failed to show causation because motion on the retaliation claim.

■ The International argues more plausibly, however, that it had no causal connection with Waskowski's threat and the consequences Anderson alleges. Anderson, in response, urges me to accept what he calls evidence that Myron was a liar and to infer, therefore, that the International was behind the threat and the

adverse consequences. The evidence of this supposed mendacity is the inconsistency between a denial in the International's *brief* that Myron knew anything about Anderson's case before October 1997 and evidence in the record that she did know about it as early as August. Anderson's lawyer, however, is too able not to know that a statement in a brief is not evidence unless it is an admission, which the claim at issue is not. Even if Myron is lying about when she learned of Anderson's case, moreover, no rational jury could conclude from this fact that she, and through her the International, was behind Waskowski's crude threat and its alleged consequences.

I therefore GRANT the International summary judgment on the retaliation claim, and DENY Local 165 summary judgment on that claim. I also DENY both defendants summary judgment on Anderson's claims of disability and age discrimination.